PAN AMERICAN COMPUTER CORP. AND ENDRE GUTTMANN, demandante, *v.* DATA GENERAL CORP., demandada.

*Número:* O-79-184      *Resuelto:* 14 de mayo de 1982

*Alberto Picó*, de *Brown, Newsom & Córdova*, abogado de la demandada; *José Ángel Rey*, de *Saldaña, López-Baralt & Rey*, abogado de los demandantes.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

En diversas ocasiones hemos respondido a preguntas certificadas por la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico sobre cuestiones no resueltas de Derecho puertorriqueño de conformidad con el procedimiento de certificación establecido en las Reglas 53.1(c) de Procedimiento Civil y la núm. 27 del Reglamento

de este Tribunal. I Práctica Forense, R. 53.1(c), Ap. I-A
R. 27. Véanse: *Zurkowsky* v. *Honeywell, Inc.*, 112 D.P.R. 271
(1982); *San Juan Merc.* v. *Canadian Transport Co.*, 108
D.P.R. 211 (1978); *J. Soler Motors* v. *Kaiser Jeep Int'l.*, 108
D.P.R. 134 (1978); *Blasini* v. *Beech-Nut Life Savers*, 104
D.P.R. 570 (1976). En *Zurkowsky*, sin embargo, rehusamos
contestar algunas preguntas de carácter especulativo certi-
ficadas por dicho tribunal, pero no formulamos normas o
guías específicas para el ejercicio de nuestra discreción.[1]
Lo hacemos ahora para beneficio del foro en el presente y
futuros casos.

Consideramos útil exponer primero los aspectos esencia-
les del procedimiento de certificación establecido en las
mencionadas Reglas 53.1(c) y 27, para luego considerar si
las preguntas certificadas cumplen con dichos requisitos
de forma tal que nos permitan contestarlas. Esta es una
cuestión fundamentalmente jurisdiccional que nos corres-
ponde determinar independientemente de los razonamien-
tos que la Corte federal haya tomado en consideración para
certificar las preguntas.

# I

En términos generales, el procedimiento de certifica-
ción interjurisdiccional es el instrumento procesal que
facilita a un tribunal someter, para una contestación
definitiva, a otro tribunal de una jurisdicción distinta,
preguntas sobre cuestiones dudosas que se refieren al
derecho de esa jurisdicción.[2] Es el procedimiento ade-
cuado para que una Corte federal, como en el presente

---

[1] También el pasado 4 de febrero emitimos resolución en *Grand Auto Parts
& Accesories Warehouse, Inc.* v. *Union Carbide Corp. and Union Carbide Inter
America*, O-81-569, en la que devolvimos a la Corte Federal las preguntas
certificadas por no haberlas acompañado de una relación completa de todos los
hechos pertinentes y por que las preguntas eran de carácter especulativo.

[2] Existe también la certificación intrajurisdiccional, que es la que se refiere
a tribunales de la misma jurisdicción. Véase la Regla 53.1(c), supra, y la 24 del
Reglamento de este Tribunal.

caso, obtenga del tribunal estatal de mayor jerarquía contestaciones sobre cuestiones dudosas del derecho de ese estado que surgen en pleitos ante la primera. ([3])

Como es sabido, las cortes federales tienen la obligación de aplicar el derecho de los estados en los casos de diversidad de ciudadanía. Rules of Decision Act, 28 U.S.C. sec. 1652. ([4]) *Erie R.R.* v. *Tompkins*, 304 U.S. 64 (1938); Wright, Miller and Cooper, *Federal Practice and Procedure: Jurisdiction*, 3ra ed., St. Paul, Minnesota, West Publishing Co., 1978, Sec. 4469. Por tal razón, cuando el derecho del estado no es claro la Corte federal generalmente se abstiene de decidir cuestiones bajo ese derecho que surgen en un pleito ante sí y que pueden ser determinantes en el caso. *E.g.*, *Railroad Commission of Texas* v. *Pullman Co.*, 312 U.S. 496 (1941); Wright, *Handbook of the Law of Federal Courts*, 3ra ed., St. Paul, Minnesota, 1976, Sec. 52; Wright, Miller and Cooper, *op. cit.*, Sec. 4248. Se han desarrollado al respecto diversas doctrinas bajo las cuales las cortes federales se abstienen de decidir cuestiones de derecho de los estados que no son claras y que no han sido resueltas por el más alto foro estatal. Wright, *op. cit.*, Sec. 52; Wright, Miller & Cooper, *op. cit.*, Secs. 4241–4248.

La certificación es el medio más directo, rápido y económico para que la Corte federal obtenga una

---

([3]) Para una discusión general sobre el tema puede verse, Note, *Inter-Jurisdictional Certification: Beyond Abstention Toward Cooperative Judicial Federalism*, 111 U. Pa. L. Rev. 344 (1963); Vestal, *The Certified Question of Law*, 36 Iowa L. Rev. 629 (1950–51); *Study of the Division of Jurisdiction Between State and Federal Courts* (A.L.I.), Washington, 1968, sec. 1371(e); Note, *The Case for Certification*, 12 Wm. and Mary L. Rev. 627 (1970–71); Lillich and Mundy, *Federal Court Certification of Doubtful State Law Questions*, 18 U.C.L.A. L. Rev. 888 (1971).

([4]) Dispone:

"El derecho de los diversos estados será considerado regla de decisión en acciones civiles en los tribunales de los Estados Unidos en los casos aplicables, excepto cuando la Constitución, los tratados de los Estados Unidos o las Leyes del Congreso requieran o provean lo contrario." (Traducción nuestra.)

interpretación autorizada sobre el derecho estatal. En virtud de este procedimiento las cuestiones dudosas o no resueltas en el derecho estatal son transferidas directamente al foro de mayor jerarquía del estado mediante la certificación por la Corte federal de preguntas específicas para una contestación definitiva que obligue a las partes. De otra manera, al abstenerse la Corte federal los litigantes tendrían que iniciar un nuevo pleito en los tribunales estatales siguiendo todo el trámite judicial, usualmente lento y costoso, hasta obtener una interpretación final y firme sobre el derecho estatal.

La certificación tiene, además, otra ventaja tan fundamental como la anterior, que es la de preservar y respetar la función prístina de las cortes estatales de interpretar y formular el derecho de los estados. Con ello se alivia en buena parte las tensiones inherentes al sistema federalista. Note, *Inter-Jurisdictional Certification: Beyond Abstention Toward Cooperative Judicial Federalism*, 111 U. Pa. L. Rev. 344 (1963); Note, *The Case for Certification*, 12 Wm. and Mary L. Rev. (1970–71).

No obstante, la certificación no está exenta de objeciones que deben tomarse en consideración al formular normas o guías para determinar su utilización en casos específicos. Se señala con frecuencia que la certificación puede engendrar contestaciones en abstracto al separar las cuestiones certificadas de los hechos del caso, y que puede inducir al tribunal a emitir opiniones consultivas. Lillich and Mundy, *Federal Court Certification of Doubtful State Law Questions*, 18 U.C.L.A. L. Rev. 888, 900–908 (1971); Note, *The Case for Certification*, supra, págs. 636–638; Note, *Inter-Jurisdictional Certification*, supra, págs. 351–358.

■ Ciertamente la certificación no puede eludir el principio fundamental que fija el sentido y propósito de la función judicial, el de que ésta solo puede ejercerse para resolver controversias concretas, reales y efectivas entre

litigantes que reclaman derechos opuestos ante el tribunal. *E.L.A.* v. *Aguayo*, 80 D.P.R. 552 (1958). Es necesario, por lo tanto, que la certificación satisfaga cabalmente este principio elemental de justiciabilidad no solo en nuestro foro, sino, además, en el foro federal.

Las preguntas certificadas deben, pues, ser enmarcadas en un contexto de hechos detallados y específicos y la contestación del tribunal debe ser obligatoria para las partes. No debe perderse de vista que la certificación es un medio para realizar los propósitos de la abstención de la Corte federal en un caso en que ya las partes están sometidas a su jurisdicción y que, por disposición expresa de ese tribunal, comparecen al foro estatal a ventilar las cuestiones que corresponden a éste, por lo que las determinaciones del foro estatal al respecto les obligan en cualquier procedimiento judicial ulterior entre ellos, bajo la doctrina de cosa juzgada. Más aún, la Corte federal tiene el deber de impartirle entera fe y crédito a la determinación del foro estatal conforme lo dispuesto en la Sec. 1 del Art. IV de la Constitución de los Estados Unidos y en 28 U.S.C.A. sec. 1738. Véase Note, *Inter Jurisdictional Certification and Full Faith and Credit in Federal Courts*, 45 Wash. L. Rev. 167, 174–177 (1970).

## II

A la luz de lo anterior consideramos ahora los requisitos establecidos en la Regla 53.1(c) de Procedimiento Civil y la núm. 27 del Reglamento de este Tribunal, *supra*, que rigen el procedimiento de certificación en Puerto Rico y especialmente las garantías que ofrecen contra las objeciones apuntadas. La Regla 53.1(c) dispone al respecto:

> También el recurso de certificación se formalizará cuando el Tribunal Supremo de Estados Unidos, cualquier Tribunal de Circuito de Apelaciones de Estados Unidos, Tribunal de Distrito Federal o Tribunal Estatal de los distintos Estados

de la Unión, tenga ante su consideración un caso en el cual surjan cuestiones de derecho local que sean determinantes en la causa de acción ante cualquiera de dichos tribunales, sobre las cuales no existen precedentes claros en las decisiones del Tribunal Supremo del Estado Libre Asociado de Puerto Rico, y solicite una determinación sobre tales cuestiones, radicando la correspondiente petición en la secretaría del Tribunal Supremo: I Práctica Forense, R. 53.1(c).

Y la Regla núm. 27 del Reglamento del Tribunal Supremo provee en lo pertinente:

(a) Este Tribunal podrá conocer de cualquier asunto que le fuere certificado por el Tribunal Supremo de los Estados Unidos, un Tribunal de Apelaciones de Circuito de Estados Unidos, un Tribunal de Distrito de Estados Unidos o el más alto tribunal apelativo de cualquiera de los Estados de la Unión, cuando así lo solicite cualquiera de dichos tribunales, de existir ante el tribunal solicitante cualquier asunto judicial en el que están envueltas cuestiones de derecho puertorriqueño que puedan determinar el resultado del mismo, y respecto al cual, en la opinión del tribunal solicitante, no existan precedentes claros en la jurisprudencia de este Tribunal.

(b) Dicha certificación se formalizará al radicarse la solicitud, la cual consistirá de una resolución a tales efectos emitida por el tribunal solicitante, sua sponte o a moción de cualquiera de las partes en el asunto ante dicho tribunal.

(c) La orden de certificación incluirá: (1) las preguntas de derecho cuya contestación se solicita; (2) una relación de todos los hechos relevantes a las preguntas, que demuestre claramente la naturaleza de la controversia de la cual surgen las preguntas; y (3) un apéndice en que se incluirán los originales o copias certificadas de aquella parte del expediente que, en la opinión del tribunal solicitante, sea necesario o conveniente remitir a este Tribunal para contestar las preguntas.

.    .    .    .    .    .    .    .

(f) Las partes en el asunto original que deseen someter alegatos tendrán términos simultáneos de treinta días para

así hacerlo, contados desde el momento de envío de la orden de certificación a este Tribunal por el Secretario del tribunal solicitante. En dichos alegatos se hará constar su notificación al tribunal solicitante y a todas las partes en el asunto. Cualquier parte podrá replicar a cualquier alegato así notificado, dentro de los quince días de su notificación. Los alegatos principales tendrán un máximo de 30 páginas y los de réplica, 15. Cualquier parte que desee presentar argumento oral deberá indicarlo mediante moción fundamentada, radicada simultáneamente con su alegato principal, y su solicitud se resolverá conforme al Reglamento de este Tribunal. Los alegatos podrán ser en inglés o español sin necesidad de traducción, pero todos los alegatos deben firmarse por un abogado admitido al ejercicio de su profesión por este Tribunal. I Práctica Forense, R 27, Ap. I-A, págs. 690–691.

Como puede verse, ambas reglas requieren para la procedencia de la certificación que: (1) estén envueltas cuestiones de Derecho puertorriqueño; (2) dichas cuestiones puedan determinar o determinen el resultado del caso; (3) no existan precedentes claros en la jurisprudencia del Tribunal Supremo de Puerto Rico; (4) se haga una relación de todos los hechos relevantes a dichas interrogantes que demuestre claramente la naturaleza de la controversia de la cual surgen las preguntas. Las partes, además, pueden someter alegatos y solicitar vista oral.

La facultad de este Tribunal para conocer de asuntos que le son certificados por la Corte federal es de carácter discrecional y no mandatorio. Así lo reconoce el texto de la Regla 27 al disponer: "Este Tribunal *podrá* conocer de cualquier asunto que le fuera certificado. . . ." Esta es la norma recomendada en la Ley Uniforme de Certificación de Cuestiones de Derecho, 12 U.L.A., sec. 1, comentarios pág. 52 (1975), y la que se sigue en algunas jurisdicciones estatales. *Abrams* v. *West Va. Racing Commission*, 263 S.W.2d 103 (1980); *Morningstar* v. *Black & Decker Mfg. Co.*, 253 S.E.2d 666 (1979); *In re Elliot*, 446 P.2d 347 (1968).

■ Se advertirá que la Regla 53.1(c) se refiere a cuestiones de Derecho puertorriqueño "que sean determinantes en la causa de acción", mientras que la Regla 27 condiciona la certificación a cuestiones de derecho que "puedan determinar" el resultado del caso. No se trata propiamente de una diferencia de conceptos, sino más bien de una diferencia puramente semántica, sin ninguna consecuencia ulterior. La Corte federal no puede determinar a priori si la cuestión de derecho estatal es determinante de la causa de acción ante sí sin saber qué determinación ha de tomar el foro estatal sobre la misma. Si la cuestión es determinante o no habrá de depender, pues, de la interpretación que finalmente le imparta dicho foro. Basta, entonces, para el cumplimiento de este requisito, que una de las posibles contestaciones de este Tribunal a la pregunta certificada pueda determinar el resultado del caso. *Study of the Division of Jurisdiction Between State and Federal Courts*, The American Law Institute, 295 (1968); [5] *White* v. *Edgar*, 320 A.2d 668, 677 (1974).

Esta es la interpretación que hemos aplicado implícitamente en *San Juan Mercantile* v. *Canadian Transport Co.*, supra, y en *Córdova & Simonpietri* v. *Crown American*, 112 D.P.R. 797 (1982). En Córdova aceptamos contestar la cuestión de si aplica a la terminación de los contratos de agencia de seguros el Código de Seguros o la Ley Núm. 75 de 24 de junio de 1964, Ley de Contrato de Distribución. La aplicación del Código de Seguros a dichos contratos era determinante del resultado del caso en la Corte federal, pues procedía la desestimación de la demanda en dicho foro, pero no así la aplicación de la Ley Núm. 75, porque en tal situación el asunto revertía a la Corte federal para la continuación de los procedimientos.

---

[5] En el Proyecto Preliminar Núm. 5 del American Law Institute se utilizó el concepto de "que sea determinante", pero posteriormente en el Proyecto Preliminar Núm. 6 de 1968 se sustituyó el lenguaje por el de "pueda ser determinante". *Study of the Division of Jurisdiction Between State and Federal Courts*, The American Law Institute, *supra*.

La Regla 27(c)(1) requiere específicamente "una relación de todos los hechos relevantes a las preguntas, que demuestren claramente la naturaleza de la controversia de la cual surgen las preguntas . . ." como garantía contra contestaciones en abstracto o puramente consultivas vedadas al ejercicio de nuestra función judicial. *E.L.A.* v. *Aguayo*, supra. La relación de hechos es esencial no solo para que este Tribunal pueda ejercer jurisdicción, sino porque es indispensable para una comprensión clara de la controversia. Los hechos, por supuesto, tienen que surgir de una determinación de la Corte federal, bien por haber sido estipulados por las partes o porque hayan sido ventilados y adjudicados en el proceso. El estado de Florida, que fue el primero en aprobar un estatuto de certificación, solo permite este procedimiento cuando se inicia por una corte de apelación. De esta manera se asegura que los hechos hayan sido previamente determinados por el tribunal de instancia. Fla. Stat. Ann. sec. 25.031. En nuestra jurisdicción también se limita el procedimiento a tribunales de apelación, a excepción de la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico. R. 27(a), *supra.*

Bajo el esquema procesal diseñado por las Reglas 53.1(c) y 27, nuestra decisión sobre las preguntas certificadas se produce en un procedimiento adversativo en el que las partes se encuentran debidamente ante este Tribunal, pueden someter alegatos —los cuales deberán ser notificados a la Corte federal— y presentar argumentos orales, como se hizo en este caso. Tenemos, pues, jurisdicción sobre las partes y sobre la materia y nuestra decisión constituye cosa juzgada. Como ya vimos, la Corte federal viene obligada a aplicarla tanto bajo la doctrina de abstención, como por la de entera fe y crédito y por disposición expresa del Rules of Decision Act. Véase escolio 4. Wright, Miller and Cooper, *op. cit.*, sec. 4469.

En virtud de todo lo anterior, nuestro procedimiento de certificación cumple cabalmente con los requisitos de justiciabilidad establecidos en este foro y en el federal.

Queda, sin embargo, por discutir un problema fundamental de justiciabilidad relacionado con la certificación de preguntas que tratan sobre la constitucionalidad de una ley estatal. Lo discutimos más adelante al considerar los hechos específicos de este caso y las preguntas certificadas.

## III

Data General Corporation y Endre Guttmann otorgaron en 1974 un contrato mediante el cual éste se convirtió en distribuidor exclusivo de aquélla. El mismo se renovaría automáticamente por plazos adicionales de un año, sujeto a su terminación en cualquier momento previa notificación con treinta días de anticipación a voluntad de cualquiera de las partes. Posteriormente Guttmann cedió sus derechos sobre dicho convenio a Pan American Computer Corporation. En 1978 Data notificó a Pan Am que daba por terminado el contrato al expirar el plazo adicional entonces corriente, o sea, el 8 de febrero de 1979, fundándose en la cláusula de terminación unilateral. Pan Am y Guttmann iniciaron entonces una acción en el Tribunal Superior basada en la Ley de Contratos de Distribución, Ley Núm. 75 de 24 de junio de 1964 (10 L.P.R.A. sec. 278). El pleito fue trasladado a la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico. Allí Data solicitó la desestimación alegando que la referida Ley Núm. 75 violaba varias disposiciones de la Constitución del Estado Libre Asociado de Puerto Rico y de la de los Estados Unidos.

En una vista para dilucidar la procedencia de remedios provisionales Data intentó probar que hubo justa causa para denegar la renovación del contrato. La Corte federal declaró con lugar el remedio solicitado, resolviendo a esos

fines que las probabilidades señalaban la inexistencia de justa causa de Data para cancelar el contrato. A la vez declaró con lugar la solicitud de certificación a este Tribunal, resolviendo que había suficiente contexto de hechos para resolver las cuestiones certificadas. Expresó el Tribunal federal que para efectos de la certificación de la cuestión bajo la Constitución del Estado Libre Asociado de Puerto Rico, el demandado aceptaba que las disposiciones de la Ley Núm. 75 que penalizan la terminación del contrato sin justa causa le aplicaban en todo su vigor, pero que esto no prejuzgaba la procedencia en los méritos de defensas como la de justa causa. Éstas serían dilucidadas en los méritos si el Tribunal Supremo de Puerto Rico resolvía a favor de la constitucionalidad de la Ley.

El Tribunal federal certificó las siguientes preguntas:

a. Si las disposiciones de la Ley Núm. 75, aplicadas a un contrato en el que se concede a un manufacturero el derecho a terminar el convenio, constituyen una interferencia con las relaciones contractuales privadas o violan las garantías del debido proceso de ley e igual protección de las leyes bajo la Constitución del Estado Libre Asociado de Puerto Rico.

b. Si el requisito de "justa causa" contenido en la Ley Núm. 75 tal como fue interpretado en *Warner Lambert Co.* v. *Tribunal Superior*, 101 D.P.R. 378 (1973) viola los derechos del principal al debido proceso de ley y la igual protección de las leyes bajo la Constitución del Estado Libre Asociado de Puerto Rico.

c. Si el hecho de que al vencer el contrato, al distribuidor le es otorgada la exclusiva prerrogativa de extender o terminar el acuerdo, contraviene la igual protección de las leyes bajo la Constitución del Estado Libre Asociado de Puerto Rico.

d. Si la fórmula de daños de la Ley Núm. 75 permite compensación de la plusvalía [*good will*] y pérdida de ingresos que "equivale a una duplicación", *Fornaris* v. *Ridge Tool Co.*, 423 F.2d 563, 566 (C.A.1, 1970), rev'd 400 U.S. 41 (1970), y si en la afirmativa, si tal duplicación y la fórmula

en sí violan la Constitución del Estado Libre Asociado de Puerto Rico.

e. Si en ausencia de un hallazgo por parte de la Legislatura de Puerto Rico de "un solo hecho", que sostenga la exposición de motivos de la ley, *Warner Lambert Co.*, supra, a la pág. 398, la Ley Núm. 75 interfiere indebidamente con relaciones contractuales privadas y/o viola el debido proceso de ley bajo la Constitución del Estado Libre Asociado.

Estas preguntas requieren una determinación sobre la constitucionalidad de varios aspectos de la Ley Núm. 75 a la luz de las garantías al debido proceso de ley y a la igual protección de las leyes contenidas en nuestra Constitución. Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 7. Las garantías son similares a las contenidas en la Constitución de los Estados Unidos, Enmienda XIV. Diversas razones que esencialmente dimanan de la doctrina de abstención, y especialmente de los requisitos de justiciabilidad, impiden que sean objeto del procedimiento de certificación.

▮ Los objetivos principales de la doctrina de abstención aquí aplicables son el de evitar que la Corte federal resuelva cuestiones constitucionales federales si el caso puede ser resuelto por una cuestión estatal y diferir a los tribunales estatales la resolución de esas cuestiones bajo el derecho estatal. De esa manera se promueven las relaciones de armonía y de respeto entre los tribunales de una y otra jurisdicción. Esto va a la médula del sistema federalista. Las cortes federales fueron creadas precisamente para resolver cuestiones federales, así como los tribunales de los estados fueron creados esencialmente para resolver cuestiones estatales.(6) Cuando la cuestión planteada se

---

(6)En *Younger* v. *Harris*, 401 U.S. 37 (1971), se resumió la doctrina federalista en la siguiente manera:

". . . un debido respeto por las funciones estatales, un reconocimiento . . . de que todo el país está formado por una unión de gobiernos estatales separados, y una preservación de la creencia de que el Gobierno Nacional sale mejor si a los

refiere a la validez de una ley estatal bajo una disposición de la Constitución del estado que es similar a una disposición de la Constitución federal, como en este caso, la cuestión es una cuestión mixta de Derecho federal y estatal que debe ser resuelta por la Corte federal, puesto que la validez del estatuto bajo la Constitución federal necesariamente dispone de la cuestión bajo la ley estatal.

En estas circunstancias debemos rehusar la certificación, ya que nuestra decisión sería puramente consultiva. La Corte federal podría ignorarla y resolver la misma cuestión bajo criterios constitucionales federales distintos a los nuestros, o aun bajo los mismos criterios podrían llegar a un resultado diferente. Tal actuación tendría el efecto impermisible de que la Corte federal estaría revisando nuestra decisión, cuando el único tribunal que puede revisar una decisión nuestra en casos apropiados es la Corte Suprema de los Estados Unidos. 28 U.S.C.A. sec. 1258. Es por eso que adoptamos la norma de que sólo cuando la validez del estatuto se impugne bajo una disposición constitucional estatal que no tiene equivalencia en la Constitución federal es que procede la certificación de la pregunta. *Reetz* v. *Bozanich*, 397 U.S. 82 (1970); *White* v. *Edgar*, supra; *Abrams* v. *West Va. Racing Commission*, supra.

El Juez Friendly, Presidente de la Corte de Apelaciones de los Estados Unidos para el Segundo Circuito, resumió la norma federal en los siguientes términos:

La abstención está . . . justificada cuando la ley estatal está sujeta a una impugnación razonable bajo disposiciones constitucionales estatales que no tienen equivalencia con las

estados y sus instituciones se les permiten llevar a cabo sus funciones libremente según sus propios métodos . . . el concepto . . . representa un sistema sensitivo a los intereses legítimos de ambos gobiernos, estatal y federal, y en el cual el Gobierno Nacional, no empece cuán deseoso esté de vindicar y proteger derechos e intereses federales, siempre procure hacerlo en forma tal de no interferir indebidamente con las actividades legítimas de los estados." (Traducción nuestra.) Pág. 44.

disposiciones de la Constitución federal. En este caso . . . la abstención puede ahorrar a las cortes federales una tarea inútil y una confrontación innecesaria con un estado. Por otro lado, una corte dividida ha resuelto que la abstención no se justifica cuando la ley estatal es clara y la impugnación bajo la constitución estatal se hace sobre las mismas bases que la federal. Friendly, *Federal Jurisdiction: A General View, 1973*, pág. 93, citado en *White* v. *Edgar*, supra, a la pág. 680.

La propia resolución de la Corte federal que certificó las preguntas en cuestión admite la similaridad entre las disposiciones de la Constitución federal y la de Puerto Rico, puntualizando la supremacía de la Constitución federal sobre la del Estado Libre Asociado de Puerto Rico en tales casos. Reproducimos las expresiones de la Corte federal al respecto:

Reconocemos que las disposiciones en juego son casi idénticas en sus términos a aquellas de la Constitución de los Estados Unidos. En este contexto es claro que el ámbito de protección de las garantías constitucionales estatales no puede dar menos protección a los derechos protegidos federalmente. No obstante, ello no es fundamento para rechazar la certificación. Nada impide que el Estado Libre Asociado interprete el ámbito de los derechos protegidos de una manera compatible con las doctrinas federales aplicables. Decisión y Orden emitida por la Corte federal el 9 de abril de 1979, pág. 2, escolio 2.

En otras palabras, la Corte federal se reserva la facultad de determinar la corrección de nuestra decisión, por lo que la misma sería, como ya apuntamos, meramente consultiva.

Hay un fundamento adicional que nos impide considerar la certificación. Surge de la resolución de la Corte federal que, aunque para efectos de la certificación las partes acordaron que no existía justa causa de parte del principal para terminar el contrato, la Corte federal se reservó la facultad de determinar en los méritos si existía

o no justa causa en caso de que nuestra decisión sostuviera la constitucionalidad de la Ley Núm. 75. Es decir, la certificación nos pide, en efecto, que decidamos una cuestión constitucional que es, a nuestro juicio, prematura, porque no habría que resolverla si se decidiera que hay justa causa, lo cual violaría las normas de justiciabilidad adoptadas en esta jurisdicción desde *E.L.A.* v. *Aguayo, supra.* [7]

En vista de que las preguntas certificadas por la Corte federal en este caso no cumplen con las normas pautadas en esta opinión, estamos impedidos de contestarlas.

*Se dictará sentencia de conformidad con los fundamentos expuestos y se devolverán las preguntas certificadas a la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico.*

El Juez Asociado Señor Negrón García no intervino. El Juez Presidente Señor Trías Monge se inhibió.

---

[7] La Corte federal expresa en su resolución que:

". . . Aun presumiendo, *arguendo*, que la validez del estatuto sea a la postre sostenida, el demandado tendrá derecho a una resolución a su favor si la evidencia demuestra que la terminación fue ocasionada por circunstancias imputables al demandante. Desde cierto punto de vista, este resultado final, disminuiría la utilización de la certificación. Pero sostener que la utilización de ese mecanismo requiere que aguardemos a una completa elucidación de los hechos en el caso de autos, contravendría su *raison d'être*, pues la necesidad de una vista en su fondo sobre los hechos, de hecho depende de el rechazo de los argumentos constitucionales del demandado." Decisión y Orden de 9 de abril de 1979, págs. 2 y 3.