HIS EXCELLENCY VICENTE CUESNONGLE, O.P., ET AL., demandante, *v.* HÉCTOR R. RAMOS, SECRETARY OF THE DEPARTMENT OF CONSUMER AFFAIRS OF THE COMMONWEALTH OF PUERTO RICO, demandado.

*Número:* CE-85-468  *Resuelto:* 30 de junio de 1987

*Luis R. Dávila Colón,* abogado del apelante.

## SENTENCIA

Evaluada la solicitud de certificación de la Corte de Apelaciones para el Primer Circuito y los alegatos de las partes, el Tribunal declina contestar las preguntas certificadas. *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, 112 D.P.R. 780 (1982).

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Hernández Denton emitió opinión concurrente a la cual se unen los Jueces Asociados Señores Ortiz y Alonso Alonso. El Juez Presidente Señor Pons Núñez emitió voto concurrente y disidente. El Juez Asociado Señor Rebollo López emitió opinión disidente a la cual se une la Juez Asociada Señora Naveira de Rodón, quien además emitió opinión particular. Todos los Jueces intervienen por regla de necesidad.

Se ordena a la División de Traducciones de este Tribunal que proceda preferentemente a traducir la presente Sentencia y las opiniones emitidas para oportunamente ser certificadas al referido foro federal.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Opinión concurrente emitida por el Juez Asociado Señor Hernández Denton.

San Juan, Puerto Rico, a 30 de junio de 1987.

De acuerdo con el procedimiento de certificación interjurisdiccional, el Tribunal de Apelaciones para el Primer Circuito nos ha sometido dos preguntas sobre interpretación de legislación local aplicable al litigio entre el Departamento de Asuntos del Consumidor y la Universidad Central de Bayamón. Por los fundamentos que

expresamos a continuación, entendemos que este Tribunal está impedido de contestar las preguntas certificadas.

I

Durante el inicio del primer semestre del año académico de 1980–81, la Universidad Central de Bayamón (Universidad)(¹) fue escenario de una disputa laboral entre los empleados no docentes y los administradores. En solidaridad y apoyo a la posición de los trabajadores, algunos estudiantes se unieron a la huelga. Esta situación afectó el orden institucional y ocasionó que el comienzo de clases en la Universidad fuera pospuesto en dos ocasiones. Finalmente, el 25 de agosto comenzaron las clases, aunque el programa de estudios tuvo que ser modificado, y algunos cursos fueron suspendidos. Cuatro estudiantes objetaron la decisión de la Universidad que cancelaba los cursos en los cuales se habían matriculado y presentaron querellas ante el Departamento de Asuntos del Consumidor (D.A.C.O.) por alegada violación de contrato, y solicitaron la devolución del dinero pagado por concepto de matrícula para el referido semestre académico.

D.A.C.O. declaró sin lugar las querellas de tres de los estudiantes por concluir que no existía una causa de acción que justificara la concesión de un remedio. No obstante, la reclamación del estudiante Monfant Seijó fue declarada con lugar(²) por lo que se le ordenó a la Universidad devolverle lo pagado en concepto de matrícula, y se le advirtió que

---

(¹) Esta es una universidad católica de artes liberales, privada, coeducacional, organizada como corporación sin fines de lucro y administrada por la orden de los Padres Dominicos.

(²) A pesar de que en la querella se hicieron varias alegaciones por incumplimiento de contrato, D.A.C.O. *sólo* adjudicó la de cancelación de cursos.

de incumplir la orden se le impondría una multa administrativa.[3]

El 9 de diciembre de 1981, la Universidad presentó ante el Tribunal de Estados Unidos para el Distrito de Puerto Rico una acción de sentencia declaratoria e *injunction* contra el Lcdo. Héctor Ramos, Secretario de D.A.C.O. En la misma se alegaba que la actuación de la agencia constituía una intervención indebida con una universidad religiosa en violación de la Constitución de Estados Unidos y del Estado Libre Asociado.

Dicho Tribunal de Distrito declaró con lugar una moción de sentencia sumaria de la Universidad demandante y determinó que la orden de D.A.C.O. era contraria a la Primera Enmienda de la Constitución de Estados Unidos y prohibió permanentemente que la misma fuera puesta en vigor.

Contra dicha determinación, la parte demandada presentó apelación ante el Tribunal de Apelaciones para el Primer Circuito. Éste, mediante opinión de 10 de agosto de 1983,[4] revocó al Tribunal de Distrito por entender que el reclamo de violación a la libertad de culto era inmeritorio. Advirtió, sin embargo, sobre la posibilidad de que pudiera existir una violación de su derecho a la libertad de

---

[3] Debemos señalar que la jurisdicción de este caso fue asumida por D.A.C.O. como parte de su función adjudicativa y no en su función reguladora de un sector particular. Sobre la función de D.A.C.O. como foro adjudicativo, véanse: *Ferrer Rodríguez* v. *Figueroa,* 109 D.P.R. 398 (1980); *P.R. Amer. Ins. Co.* v. *P.R. Park. System,* 108 D.P.R. 106 (1978); *Pérez Ríos* v. *Hull Dobbs,* 107 D.P.R. 834 (1978); *Hernández Denton* v. *Quiñones Disdier,* 102 D.P.R. 218 (1974). En este caso, al amparo del poder de adjudicar querellas de consumidores, según expresamente delegado por la Asamblea Legislativa, 3 L.P.R.A. secs. 341e(c), 341h y 341m, D.A.C.O. resolvió una controversia estrictamente contractual en el caso particular ante su consideración. No se trata de un reglamento de la agencia de aplicación general a todas las universidades no sectarias. Tampoco estamos ante una investigación general de los colegios y universidades privadas no sectarias que operan sin fines de lucro.

[4] *Cuesnongle* v. *Ramos,* 713 F.2d 881 (1er Cir. 1983).

expresión, por lo que devolvió el caso al Tribunal de Distrito para que los demandantes tuvieran la oportunidad de enmendar sus alegaciones e incluir esa nueva causa de acción.

El 27 de septiembre de 1983, la Universidad enmendó su demanda y alegó que la actuación de D.A.C.O. constituía una intervención inconstitucional con la autonomía universitaria. El Tribunal de Distrito determinó que D.A.C.O. tenía jurisdicción para la atención de *dicho asunto*[5] por lo que denegó la solicitud de sentencia declaratoria e *injunction* y concluyó que:

> Bajo las circunstancias de este caso, la resolución administrativa objetada se queda corta de invadir el área de libertad académica. No se ha demostrado que haya ocurrido una intromisión con su autonomía o una intrusión con las prerrogativas y derechos de la UCB de determinar sus normas internas. (Traducción nuestra.) *Exhibit* 49, págs. 422, 445.

Expresó, además, que aunque la determinación de D.A.C.O. fuera equivocada en términos de derecho contractual, eso no la convertía en una actuación inconstitucional. Sobre la alegación de los demandantes de que el Consejo de Educación Superior tenía la jurisdicción exclusiva sobre dicho asunto, el tribunal concluyó que la jurisdicción de dicho organismo es a los efectos de acreditar a las universidades y expedirles o cancelarles licencias; la ley no le concede autoridad para entender en reclamaciones de estudiantes por incumplimiento de contrato.

La Universidad apeló la referida sentencia. Conforme a la Regla 27 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. I-A y la Regla 53.1(c) de Procedimiento Civil

---

[5] Entendió el tribunal que con relación a la posible jurisdicción de D.A.C.O. en otros asuntos que involucren la relación estudiante-universidad la misma habría que determinarla caso a caso.

de 1979 (32 L.P.R.A. Ap. III), el Tribunal de Apelaciones para el Primer Circuito nos somete el presente recurso de certificación. Las preguntas cuya contestación se solicita son las siguientes:

> a. ¿Aplica la Ley Orgánica de ... D.A.C.O., ... sin condiciones o restricciones, a los colegios y universidades privadas fundamentalmente no sectarios, que operan sin fines de lucro?
> b. En caso de que la ley no aplicara de forma general a esos colegios y universidades, ¿tiene D.A.C.O. jurisdicción para ordenar, bajo penalidades de multa por su incumplimiento, el reembolso ... de la matrícula de un estudiante porque la Universidad le canceló dos de sus cursos por motivo de una huelga en el recinto? (Traducción nuestra.) Petición de certificación de 3 de julio de 1985, pág. 2.

## II

Cuando las partes sometidas a la jurisdicción de un tribunal federal le plantean controversias que versan principalmente sobre interpretación de derecho estatal, la corte tiene a su disposición, como alternativa a la abstención judicial, el procedimiento de certificación. A instancias del tribunal federal, las partes comparecen al foro estatal de mayor jerarquía a dilucidar cuestiones de derecho local y así obtener su interpretación. Las contestaciones les obligan en cualquier procedimiento judicial ulterior entre ellos, bajo la doctrina de cosa juzgada:

> La certificación es el medio más directo, rápido y económico para que la Corte federal obtenga una interpretación autorizada sobre el derecho estatal. En virtud de este procedimiento las cuestiones dudosas o no resueltas en el derecho estatal son transferidas directamente al foro de mayor jerarquía del estado mediante la certificación por la Corte federal de preguntas específicas para una cuestión definitiva que obligue a las partes. De otra manera, al abstenerse la Corte federal los litigantes tendrían que iniciar

un nuevo pleito en los tribunales estatales siguiendo todo el trámite judicial, usualmente lento y costoso, hasta obtener una interpretación final y firme sobre el derecho estatal. *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, 112 D.P.R. 780, 785 (1982). Nota, *Inter-Jurisdictional Certification: Beyond Abstention and Toward Cooperative Judicial Federalism*, 111 U. Pa. L. Rev. 344 (1963).

En Puerto Rico la certificación interjurisdiccional se reconoce expresamente en la Regla 53.1 de Procedimiento Civil, *supra*, y la Regla 27 del Reglamento de este Tribunal, *supra*. Al amparo de estas reglas, hemos establecido que la facultad de este Tribunal para conocer los asuntos que le son certificados por una corte federal es de carácter discrecional y no mandatorio. Regla 27 del Reglamento del Tribunal Supremo, supra; *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, supra; *Dapena Thompson* v. *Colberg Ramírez*, 115 D.P.R. 650 (1984); *In re Elliot*, 446 P.2d 347 (Wash. 1968).

Ambas reglas exigen que para que proceda una certificación (1) la controversia tiene que involucrar cuestiones de derecho puertorriqueño; (2) dichas cuestiones pueden determinar o definir el resultado del caso; (3) no existen precedentes claros en la jurisprudencia de este Tribunal, y (4) que se haga una relación de todos los hechos relevantes a dichas interrogantes que demuestre claramente la naturaleza de la controversia de la cual surgen las preguntas. Las partes, además, pueden someter alegatos y solicitar vista oral. *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, supra, pág. 788.

Las preguntas certificadas tienen que ser enmarcadas en un *contexto de hechos detallados y específicos* y la contestación del Tribunal *debe ser obligatoria para las partes*. La controversia jurídica que suscita la certificación tiene que originarse en un caso o controversia real entre las partes. *E.L.A.* v. *Aguayo*, 80 D.P.R. 552 (1958); *AETNA*

*Life Ins. Co.* v. *Haworth*, 300 U.S. 227, 240 (1937). De lo contrario, podría inducirse a una opinión consultiva que afecta la legitimidad y efectividad del dictamen adjudicativo. Véanse: *McHenry* v. *Alford*, 168 U.S. 651, 659 (1898); *United States* v. *Union Pacific Railway*, 168 U.S. 505, 513 (1897); *Labor Board* v. *White Swan Co.*, 313 U.S. 23, 27 (1941); *Atlas Ins. Co.* v. *Southern, Inc.*, 306 U.S. 563, 573 (1939). Además, se reconoce que el tribunal federal ha de impartir entera fe y crédito a la determinación del foro estatal conforme lo dispuesto en el Art. IV, Sec. 1 de la Constitución de Estados Unidos, 28 U.S.C. sec. 1738; *Hopkins* v. *Lockheed Aircraft Corp.*, 394 F.2d 656 (5to Cir. 1968); J. L. De Weerdt, *Inter-Jurisdictional Certification and Full Faith and Credit in Federal Courts*, 45 Wash. L. Rev. 167 (1970); R. Lillich y R. Mundy, *Federal Court Certification of Doubtful State Law Questions*, 18 UCLA L. Rev. 888 (1971).

Finalmente, la certificación provee ventajas tanto a los litigantes como al sistema judicial, economiza tiempo y recursos, trae uniformidad en la interpretación estatutaria, protege los derechos federales de las partes, delimita adecuadamente las controversias y armoniza las relaciones entre el foro federal y el estatal. J. Scanelli, *The Case for Certification*, 12 Wm. y Mary L. Rev. 627 (1971).

## III

Contrario a la mayor parte de los casos certificados ante este Tribunal, no nos encontramos frente a un pleito donde el foro judicial federal asume jurisdicción por diversidad de ciudadanía. La controversia se origina en una petición de *injunction* y solicitud de sentencia declaratoria al amparo de la Ley Federal de Derechos Civiles, 42 U.S.C. sec. 1983, presentada contra un miembro del Gobierno de Puerto Rico —el Secretario del Departamento de Asuntos del Consumidor.

Para poder contestar las preguntas certificadas tendríamos que necesariamente analizar si este tipo de intervención estatal viola las cláusulas constitucionales de Puerto Rico que protegen la libertad de expresión y establecen la separación de Iglesia y Estado, Art. II, Secs. 1, 3, 4 y 7, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, págs. 257, 262, 265 y 275. No podemos resolver el alcance de la jurisdicción de D.A.C.O. en este caso relacionado con una universidad afiliada a una iglesia, sin necesariamente examinar si el ejercicio del poder delegado a la agencia de adjudicar querellas, violó las disposiciones constitucionales sobre libertad de expresión y libertad de culto. Estas garantías de nuestra Constitución son análogas a las consagradas en la Primera Enmienda de la Constitución de Estados Unidos.

Estamos pues ante una situación similar a la de *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, supra. Nos confrontamos con una controversia sobre la validez constitucional de una ley estatal bajo una disposición de la Constitución de Puerto Rico que es similar a una disposición de la Constitución federal. "[L]a cuestión es una cuestión mixta de Derecho federal y estatal que debe ser resuelta por la Corte federal, puesto que la validez del estatuto bajo la Constitución federal necesariamente dispone de la cuestión bajo la ley estatal". *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, supra, pág. 794. Nuestra decisión sería puramente consultiva. Aunque reconocemos que en el pasado la Corte de Apelaciones del Primer Circuito ha tenido mucha deferencia a nuestros dictámenes, en el contexto de este caso podría resolverse la misma cuestión según criterios federales distintos a los nuestros.

Desde *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, supra, establecimos que la certificación procede sólo cuando la validez de un estatuto se impugna bajo una disposición constitucional estatal que no tiene equivalencia en la

Constitución federal. Ibíd.; *Reetz* v. *Bozanich*, 397 U.S. 82 (1970); *White* v. *Edgar*, 320 A.2d 668, 677 (Me. 1974); *Abrams* v. *West Va. Racing Commission*, 263 S.E.2d 103 (W. Va. 1980).

Por las razones explicadas anteriormente, *nos encontramos con una solicitud de certificación que nos vemos impedidos de contestar.*

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López a la cual se une la Juez Asociada Señora Naveira de Rodón.

Como consecuencia del procedimiento de certificación interjurisdiccional sometido ante nuestra consideración por el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito debemos contestar:

¿Le concede la ley orgánica del Departamento de Asuntos del Consumidor (D.A.C.O.) facultad o poder (jurisdicción) a dicho organismo administrativo para entender y resolver una querella —fundada en alegada violación de contrato— presentada por un estudiante en solicitud de devolución de dinero pagado por él en concepto de matrícula contra la institución universitaria en que éste estudia, *institución que es una privada, coeducacional y organizada sin fines de lucro?*[1]

Somos del criterio que este Tribunal, sin realizar mucho esfuerzo, debe poder contestar la referida interrogante. Una mayoría de los señores jueces que componen el Tribunal,

---

[1] "... los términos específicos utilizados por la Corte federal para la formulación de las preguntas no limitan en forma alguna nuestra facultad para exponer la controversia conforme nuestro mejor entendimiento del récord ni restringe el ámbito de nuestra función interpretativa". *Córdova & Simonpietri* v. *Crown American*, 112 D.P.R. 797, 799 (1982).

amparándose en tecnicismos y en unos fundamentos de derecho erróneos, se niega a hacerlo. Es por ello que disentimos.

## I

Como es sabido, el procedimiento de certificación interjurisdiccional se ha desarrollado en Estados Unidos como complemento o mecanismo alterno a la doctrina de abstención en el ámbito federal, la cual contempla la decisión de un tribunal de dicho sistema de no intervenir en un caso en particular, a pesar de tener jurisdicción, cuando el hacerlo conlleva resolver cuestiones de derecho estatal que no son claras o no han sido resueltas anteriormente por el foro judicial estatal. *Railroad Commission of Texas* v. *Pullman Co.*, 312 U.S. 496 (1941). Estudiosos de la materia han expresado que la certificación interjurisdiccional no sólo cumple con los objetivos de la doctrina de abstención federal sino que representa "a more perfect attempt at *cooperative* judicial federalism, since concern for state sovereignty is implemented through a more efficient and simpler proceeding". (Énfasis suplido.) Nota, *Interjurisdictional Certification: Beyond Abstention toward Cooperative Judicial Federalism*, 111 U. Pa. L. Rev. 344, 350 (1963).

En *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, 112 D.P.R. 780, 788 (1982) señalamos que si bien es cierto que la "facultad de este Tribunal para conocer de asuntos que le son certificados por la Corte federal es de carácter discrecional", expresamente reconocimos que dicho mecanismo procesal —al proveer un medio "directo, rápido y económico para que la Corte federal obtenga una interpretación autorizada sobre el derecho estatal"— tiene la ventaja fundamental de evitar que los litigantes incurran en gastos innecesarios y la de aliviar "las tensiones in-

herentes al sistema federalista". El Tribunal Supremo de Estados Unidos, en la más reciente oportunidad que ha tenido de expresarse sobre la materia, ha dicho que:

> The certification procedure is useful in reducing the substantial burdens of cost and delay that abstention places on litigants. Where there is an uncertain question of state law that would affect the resolution of the federal claim, and where delay and expense are the chief drawbacks to abstention, the availability of certification becomes an important factor in deciding whether to abstain. *Houston* v. *Hill*, 55 L.W. 4829 (1987).

Dicha materia está regulada expresamente en nuestra jurisdicción por la Regla 53.1(c) de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) y por la Regla 27 del Reglamento de este Tribunal, 4 L.P.R.A. Ap. I-A. En el citado caso de *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, ante, pág. 788, señalamos que dichas disposiciones requieren para la procedencia de la certificación que: "(1) estén envueltas cuestiones de Derecho puertorriqueño; (2) *dichas cuestiones puedan determinar o determinen el resultado del caso*; (3) no existan precedentes claros en la jurisprudencia del Tribunal Supremo de Puerto Rico; (4) se haga una relación de todos los hechos relevantes a dichas interrogantes que demuestre claramente la naturaleza de la controversia de la cual surgen las preguntas". (Énfasis suplido.) Resulta necesario enfatizar que, *en relación con el segundo de los requisitos antes enumerados*, en el referido caso de *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, ante, pág. 789, hicimos la observación de que si la "cuestión es determinante o no habrá de depender de la interpretación que finalmente le imparta" el foro federal; por lo que "[b]asta, entonces, para el cumplimiento de este requisito, *que una de las posibles contestaciones de este Tribunal a la pregunta certificada pueda determinar el resultado del caso*". (Énfasis suplido.)

## II

En el presente caso, el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito nos certificó las siguientes dos preguntas:

a. Does the Department of Consumer Affairs (DACO) Organic Act, Apr. 23, 1973, No. 5, 3 L.P.R.A. Secs. 341a–341v, apply without qualification or restriction *to private, primarily non-sectarian, non-profit colleges* and universities in Puerto Rico?

b. If said Act does not so apply generally to such college[s] and universities, does it nevertheless apply to the DACO ruling in this case that a student, who because of a campus strike suffered the cancellation of two of his classes, was entitled to a refund of his registration fees of $217, under penalty of fine for non-compliance? (Énfasis suplido.) Petición de certificación de 3 de julio de 1985, pág. 2.

Dicho foro judicial cumplió totalmente con lo exigido en el inciso (c) de la citada Regla 27 del Reglamento de este Tribunal, *supra*; esto es, incluyó —en adición a las preguntas de derecho cuya contestación se solicita— "(2) una relación de todos los hechos relevantes a las preguntas, que demuestre claramente la naturaleza de la controversia de la cual surgen las preguntas, y (3) un apéndice en que se incluirán los originales o copias certificadas de aquella parte del expediente que, en la opinión del tribunal solicitante, sea necesario o conveniente remitir a este Tribunal para contestar las preguntas".

Resulta importante señalar, en adición, que en la solicitud de certificación que nos hiciera, expresó el mencionado tribunal:

We are conscious of the already lengthy history of this litigation and reluctant to prolong it further, *but at the same time we are even more reluctant to subject this statute to constitutional scrutiny without a definitive interpretation from the Supreme Court of Puerto Rico.* The teaching of the

Supreme Court of the United States in *Fornaris* v. *Ridge Tool Co.,* 400 U.S. 41 (1970), would seem to be pertinent here. If we may paraphrase,

> *"Whether the Supreme Court of Puerto Rico would give the same broad sweep to ['consumers' and 'services'] as did the [district court] is something we do not know. It is conceivable that [DACO] might be judicially confined to a more narrow ambit which would avoid all constitutional questions."* Id. at 44.

> *See also Ashwander* v. *Tennessee Valley Authority,* 297 U.S. at 288, 347 (1936) (Brandeis, J., concurring: "[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.") (Énfasis suplido.) Petición de certificación, *supra,* págs. 4-5.

Realmente no se necesita ser muy perspicaz para poder colegir, de lo antes transcrito, que el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito, en cumplimiento de la norma jurisprudencial por todos conocida, *tiene la intención de evitar resolver la controversia constitucional que tiene ante su consideración, de ello ser posible.* En otras palabras, dicho tribunal entiende que una de las contestaciones que este Tribunal podría emitir en el presente caso —esto es, la de que la ley que creó a D.A.C.O. no faculta a dicha agencia a entender en la controversia que resolvió— puede disponer definitivamente del caso sin necesidad de ellos tener que entrar a resolver si dicha ley orgánica, en ese aspecto, viola la Constitución federal.

De manera, pues, que la certificación interjurisdiccional que nos somete el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito *cumple con todos y cada uno de los cuatro requisitos* que señaláramos en el caso de *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.,* ante. Ciertamente están envueltas cuestiones de Derecho puertorriqueño, en relación con las cuales no existen

decisiones de este Tribunal; contamos con una relación de todos los hechos relevantes a la interrogante sometida que demuestra claramente la naturaleza de la controversia de la cual surge la interrogante, y, definitivamente, una de las posibles contestaciones de este Tribunal a dicha interrogante puede determinar el resultado del caso.

## III

Ante esta situación, la opinión concurrente que sirve de base a la sentencia que emite el Tribunal expresa que:

> Para poder contestar las preguntas certificadas *tendríamos que necesariamente analizar si este tipo de intervención estatal viola las cláusulas constitucionales de Puerto Rico que protegen la libertad de expresión y establecen la separación de Iglesia y Estado*, Art. II, Secs. 1, 3, 4 y 7, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, págs. 257, 262, 265 y 275. No podemos resolver el alcance de la jurisdicción de D.A.C.O. en este caso relacionado con una universidad afiliada a una iglesia, *sin necesariamente examinar* si el ejercicio del poder de adjudicar querellas delegado a la agencia violó las disposiciones constitucionales sobre libertad de expresión y libertad de culto. Estas garantías de nuestra Constitución son análogas a las consagradas en la Primera Enmienda de la Constitución de Estados Unidos. (Énfasis suplido.) Opinión del Tribunal, pág. 465.

Ello no es *enteramente* correcto. La interrogante que se nos plantea tiene dos posibles soluciones o contestaciones. Bajo una de ellas, no hay que necesariamente entrar en un análisis constitucional sobre las cláusulas de libertad de expresión y la de separación de Iglesia y Estado. No hay nada que nos impida decidir, *a base de una interpretación estrictamente estatutaria,* si la ley orgánica de D.A.C.O. le concede a dicha agencia administrativa facultad (jurisdicción) para resolver una controversia surgida entre un estudiante y una universidad *privada,* independientemente de que se trate de una institución docente que no sólo es

472

privada sino que es "controlada" por una organización religiosa. Ello lo logramos decidiendo, en primer término, si un estudiante de una universidad privada cualifica como un "consumidor" en virtud de la ley orgánica de D.A.C.O., y en segundo término, si los servicios docentes que presta una universidad son los "servicios" a que se refiere el Art. 6 de la referida ley, según enmendada, 3 L.P.R.A. sec. 341e.(²)

---

(²) A esos efectos, conviene "repasar" la exposición de motivos de la Ley Núm. 5 de 23 de abril de 1973, ley orgánica de D.A.C.O. Expone la misma:

"El creciente desarrollo comercial, industrial y tecnológico en el cual se ha visto envuelto Puerto Rico estos últimos años, así como la impersonalización que traen consigo los estilos altamente sofisticados de la producción, propaganda, mercadeo y venta de la diversidad de artículos y servicios en el mercado, unido a la falta de organización efectiva por parte de los consumidores, han creado un marcado desequilibrio de recursos entre los productores y los consumidores.

*"Puerto Rico ha entrado de lleno en 'la sociedad del consumo';* a donde el interés del consumidor se identifica con el interés público. Sin embargo, a pesar de la posición de importancia que ocupa el consumidor, frecuentemente se ignoran sus problemas o pasan inadvertidos o las soluciones y remedios son tardíos.

"El continuo aumento en el costo de vida y el ritmo acelerado de dicho aumento *requiere la implementación de una política de precios* a través de mecanismos efectivos de control a todos los niveles, y no meramente al nivel del consumidor. La política de precios hasta ahora implementada no ha conseguido los resultados de estabilización deseados. *Los precios, sin embargo, son solo una parte del cuadro.*

"La complejidad del mercado de bienes y servicios, unido al sinnúmero *de prácticas indeseables que algunos comerciantes y manufactureros llevan a cabo,* requieren la creación de un organismo efectivo capaz de sacar al consumidor del estado de indefensión y desvalimiento en el cual se encuentra. Este organismo deberá ventilar y adjudicar las querellas traídas por los consumidores, fiscalizar el cumplimiento de las leyes cuyo objetivo es proteger al consumidor, educar al consumidor y ponerle al consumidor representación adecuada en la defensa de todos sus derechos.

"Aunque en Puerto Rico existe mucha legislación protectora del consumidor, desde las disposiciones de nuestro Código Civil de 1889 hasta la Ley 148 del 27 de junio de 1968, que creó la Administración de Servicios al Consumidor, ni las disposiciones sustantivas del ordenamiento jurídico vigente, ni las estructuras administrativas creadas por diversas leyes especiales han conseguido implementar o vindicar adecuadamente los derechos del consumidor, y mientras existen Departamentos del Gobierno, a nivel de gabinete, ejerciendo funciones en beneficio de otros sectores de nuestro pueblo, no existe tal Departamento en beneficio del sector consumidor, que es el mayoritario.

Si la contestación es en la negativa, ello tendría el efecto de ponerle fin al pleito ante el foro federal. Sólo en la alternativa de que contestáramos en la afirmativa, esto es, que la ley orgánica del D.A.C.O. le concede esa facultad, es que, entonces, el tribunal federal entraría a examinar la constitucionalidad de ello a la luz de las disposiciones pertinentes de la Constitución de Estados Unidos en vista de que se trata de una institución docente universitaria que no sólo es privada, sino que es controlada por una organización religiosa. Cualquiera de las dos posibles contestaciones a la interrogante ante nuestra consideración cumple cabalmente con lo requerido en esta clase de situaciones a los efectos de que lo que finalmente adjudique el Tribunal —esto es, si la ley orgánica de D.A.C.O. le concede o no a esta agencia jurisdicción sobre esta clase de controversia— será mandatorio para las partes, obligándoles en cualquier procedimiento judicial entre ellas bajo la doctrina de cosa juzgada. *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, ante.

---

"Es por ello necesario e imperativo crear una estructura, de la más alta jerarquía, a nivel de gabinete, con el objeto de garantizar al consumidor la debida atención a sus problemas y para efectuar una mejor coordinación de los recursos disponibles al gobierno en el desarrollo e implementación de una política pública.

"Es menester crear una nueva estructura de la más alta jerarquía, a nivel de gabinete, con el objeto de garantizar que toda la estructura gubernamental va prestar la debida atención a estos problemas y para efectuar una mejor coordinación interagencial en el desarrollo de la política pública en este campo, y su implementación.

"*El nuevo Departamento de Asuntos del Consumidor* será una agencia especializada con personal profesional y técnico altamente competente, para poder vindicar los derechos del consumidor en una forma agresiva y firme; *para hacerle frente a las tendencias inflacionarias de nuestro mercado y para fiscalizar prácticas de mercadeo indeseable, muchas de las cuales son consecuencia directa de las estructuras monopolísticas de nuestro mercado.*

"Este nuevo Departamento tendrá amplios poderes para investigar los problemas que afectan al consumidor y podrá requerir toda la información que sea pertinente, para cumplir con los propósitos de esta ley." (Énfasis suplido.) 1973 Leyes de Puerto Rico 16–18.

En síntesis, podemos disponer del asunto planteado, vía la certificación, meramente a base de una interpretación estrictamente estatutaria sobre una ley estatal. Realmente no existe planteamiento constitucional alguno ante este Tribunal. El tribunal federal no nos ha solicitado opinión alguna sobre —en la alternativa de que nuestra posición fuera que D.A.C.O. tiene jurisdicción— si ello viola la Constitución local o federal. Dicho planteamiento lo trae por su cuenta la opinión concurrente que da base a la sentencia que se emite. Es norma trillada que este Tribunal *no* entrará a considerar la constitucionalidad de una ley a menos que dicha cuestión le sea traída a su atención por alguna de las partes. *Galarza Soto* v. *E.L.A.*, 109 D.P.R. 179 (1979). Conforme a dicha norma, en innumerables ocasiones en el pasado, hemos resuelto diferentes situaciones surgidas a la luz de distintos estatutos sin pasar juicio sobre la constitucionalidad de los mismos, cuestión que posteriormente resolvimos al ser ésta planteada. A manera de ejemplo, recordamos la ley que establece el límite sobre la suma de dinero a recobrarse en casos de reclamaciones contra el Estado, 32 L.P.R.A. sec. 3077, y la ley que establecía el límite de dos (2) años para instar demandas por impericia médica. 26 L.P.R.A. sec. 4109(1).

## IV

En conclusión, la decisión que hoy emite este Tribunal no sólo resulta ser errónea en derecho sino que, desafortunadamente, equivale a señalarle *injustificadamente* al Tribunal de Apelaciones de Estados Unidos para el Primer Circuito que ha abusado de su discreción por cuanto, en lugar de asumir jurisdicción sobre el caso, ha debido de abstenerse. Ello, lamentablemente, se aparta de la actitud de deferencia y cortesía hacia otros tribunales que tradicionalmente ha caracterizado y distinguido a este Tribunal, situación que ciertamente no ayuda a aliviar "las

tensiones inherentes al sistema federalista", *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, ante, pág. 785, sistema dentro del cual nuestro Puerto Rico se desenvuelve.

—O—

Opinión particular de la Juez Asociada Señora Naveira de Rodón.

Desde que la mayoría de los señores jueces que componen este Tribunal decidieron que no podemos contestar las preguntas certificadas, estimo que cualquier pronunciamiento sobre la jurisdicción del Departamento de Asuntos del Consumidor en relación con este asunto sería a lo sumo una opinión consultiva. Entiendo que el Tribunal debió contestarle al Tribunal federal de Apelaciones para el Primer Circuito la pregunta de si el Departamento de Asuntos del Consumidor tiene o no jurisdicción sobre controversias que involucren las relaciones contractuales entre estudiantes y colegios y universidades privadas en Puerto Rico. Por ello, me uno y estoy conforme con la opinión disidente del Juez Asociado Señor Rebollo López, en tanto y en cuanto resuelve que esta pregunta debió contestarse.

—O—

Voto concurrente y disidente del Juez Presidente Señor Pons Núñez.

Concurro en cuanto la sentencia dispone que no puede contestarse la primera pregunta certificada. Disiento en cuanto no contesta la segunda pregunta por opinar que el estatuto constitutivo le confiere jurisdicción al Departamento de Asuntos del Consumidor para entender en el asunto objeto de la controversia planteada y que bajo los hechos particulares y específicos de este caso, el ejercicio de esa jurisdicción no infringe las disposiciones constitucio-

nales sobre libertad de expresión y separación de Iglesia y Estado. La acción del Departamento de Asuntos del Consumidor ha sido una puramente adjudicativa de derechos contractuales y no participa de la naturaleza de acción cuasi legislativa o reglamentaria. No se encuentra planteada la corrección de dicha adjudicación bajo el derecho que rige los contratos. No creo que la libertad de expresión o la separación de Iglesia y Estado exigen o justifican en este caso la confiscación de los dineros de la educación del estudiante, inocente espectador y víctima de los problemas institucionales.