MERCEDES SANTIAGO HODGE ET AL., demandantes y apelados, v.
PARKE DAVIS COMPANY ET AL., demandados y apelantes.

*Número:* CT-88-615          *Resuelto:* 21 de marzo de 1990

2

4

*Charles P. Adams* y *Ramón E. Dapena*, de *Brown, Newsom & Córdova*, y *Donald R. Ware*, de *Foley, Hoag & Elliot*, abogados de los

apelantes; *Álvaro R. Calderón, Jr.*, abogado de los apelados; *Leonardo Andrade Lugo* y *Max Goldman*, de *Goldman & Antonetti*, abogados de Squibb Manufacturing, Inc., *amicus curiae*; *Alma Osorio de Davis* y *Calixto Juval Rivera*, del *Negociado de Servicios Legales del Fondo del Seguro del Estado*, en memorando de derecho presentado a solicitad del Tribunal Supremo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Este recurso nos permite examinar importantes cuestiones en torno a la extensión de la inmunidad contra reclamaciones de obreros por lesiones sufridas en el curso del empleo que le confiere a los patronos la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq.*

La Corte de Apelaciones de Estados Unidos para el Primer Circuito (en adelante Corte de Apelaciones) nos sometió dos (2) interrogantes a través del trámite de certificación interjurisdiccional provisto por la Regla 27 del Reglamento de este Tribunal, 4 L.P.R.A. Ap. I-A, y la Regla 53.1(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III. En esencia, debemos resolver si una corporación matriz puede considerarse "patrono estatutario" de los empleados de su subsidiaria y gozar así de inmunidad contra demandas por daños y perjuicios ocasionados en accidentes del trabajo. La controversia es novel en nuestra jurisdicción y no existe unanimidad de criterio en aquellas que la han considerado. Veamos el cuadro de hechos en que se produce de acuerdo con lo certificado por dicha corte y según el expediente del recurso.

I

Allá para 1970 Parke Davis & Company (en adelante Parke), una compañía norteamericana dedicada a la manufactura, distribución y venta de productos farmacéuticos, estableció e incorporó una subsidiaria, la Parke Davis Labs (en adelante Labs) para

operar con oficinas principales en Fajardo, Puerto Rico.[1] Parke es propietaria de la totalidad de las acciones de Labs. Esta última fue creada como corporación independiente y, como resultado, se ha beneficiado de los incentivos contributivos existentes en Puerto Rico en virtud de la Sec. 936 del Código de Rentas Internas federal.[2] Desde el inicio de sus operaciones, Labs ha manufacturado y empacado anticonceptivos orales.

Entre las mencionadas corporaciones existen dos (2) acuerdos: uno de 1ro de septiembre de 1969 de Licencia y Asistencia Técnica (*License and Technical Assistance Agreement*) y otro de 1ro de diciembre de 1973 para Asistencia Técnica (*Technical Assistance Agreement*). En éstos Parke le confiere a Labs un permiso no exclusivo de utilizar sus patentes, inventos y marcas en su proceso de manufactura y se compromete a proveerle a su subsidiaria la información técnica necesaria para la manufactura de ciertos productos, así como los criterios de control de calidad, las especificaciones de empaque y otras directrices análogas. Según los términos contractuales, Parke proporcionaría además la asistencia técnica necesaria en varios aspectos operacionales, entre éstos, la seguridad de los empleados.

Por la concesión del permiso Labs acordó pagarle a Parke una regalía de 5% de sus ventas. Del mismo modo se comprometió a reembolsarle el costo de los servicios técnicos ofrecidos más el 15%. Por otro lado, Parke se reservó el derecho a realizar inspecciones del proceso de manufactura y de los productos.

Desde la perspectiva de la subsidiaria, los acuerdos no obligaban a Labs a vender sus productos exclusivamente a Parke sino que le permitían vender sus productos a terceros sin limitación alguna. No obstante, Labs siempre ha vendido todos sus productos a Parke.

---

[1] Originalmente la subsidiaria se llamaba Partab Corporation.

[2] Para poder acogerse a estos beneficios, por lo menos el 80% del ingreso bruto de la corporación debe derivarse de fuentes dentro de Puerto Rico y por lo menos 75% del ingreso debe provenir de una actividad de comercio o industria en Puerto Rico. Como cuestión práctica, una compañía estadounidense debe organizar una corporación subsidiaria para hacerse cargo de las operaciones de la isla si quiere disfrutar de los incentivos contributivos de esta legislación federal. 26 U.S.C. sec. 936(a)(2).

Los demandantes son mayormente un grupo de empleados[3] de Labs que sufrieron una serie de trastornos fisiológicos causados por haber sido expuestos a hormonas en el curso de su trabajo.[4] Demandaron a Parke y a varios oficiales de Labs en la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico (en adelante Corte de Distrito). Alegaron que los demandados fueron negligentes al no proveerles condiciones adecuadas de trabajo, no facilitarles la ropa y el equipo necesario para la seguridad en el empleo, no instruirles ni supervisarles adecuadamente sobre el uso del equipo de seguridad y no advertirles sobre los peligros en el manejo y exposición de las sustancias que se usan en el proceso de manufactura. Desfilada toda la prueba, un jurado rindió un veredicto a favor de los demandantes y eventualmente el tribunal fijó la indemnización en \$2,815,000.[5]

Los demandados apelaron y entre sus planteamientos señalan que la sentencia de la Corte de Distrito debe ser revocada por estar todos cobijados por la inmunidad patronal de la Ley de Compensaciones por Accidentes del Trabajo. Sometida la apelación, la Corte de Apelaciones entendió necesario certificarnos las cuestiones de derecho siguientes:

(1) ¿Aplica la doctrina de "patrono estatutario" en el contexto de una relación entre corporaciones matriz-subsidiaria, cuando la matriz es dueña de la totalidad de las acciones de la subsidiaria, y las corporaciones están unidas en sus actividades relevantes al caso por un acuerdo de licencia?

(2) Si aplica ¿debe hacerse la determinación de "patrono estatutario" únicamente a base del acuerdo, o pueden los tribunales considerar la relación *de facto* basada, por ejemplo, en la estructura corporativa de la relación matriz-subsidiaria o en la naturaleza económica de la relación? (Traducción nuestra.) Certificación, págs. 16–17.

---

[3] También figuran como demandantes algunos familiares de empleados.

[4] Entre éstos: depresión, pérdida de líbido, esquizofrenia, mareos, dolores de cabeza, fibromas y desórdenes gastrointestinales.

[5] Originalmente el Jurado determinó los daños en más de siete (7) millones de dólares, pero las cuantías fueron reducidas por la corte mediante el procedimiento de *remittitur*.

■ Al tratarse de cuestiones de derecho puertorriqueño que son determinantes para la resolución de la apelación,(6) en ausencia de precedentes claros en nuestras decisiones y al contar con una adecuada relación de hechos relevantes, hemos aceptado la certificación solicitada. *Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780 (1982); *Medina & Medina v. Country Pride Foods*, 122 D.P.R. 172 (1988).

Considerada la trascendencia de la controversia, le requerimos al Fondo del Seguro del Estado que sometiera su posición por escrito. Tenemos el beneficio de su comparecencia. También hemos aceptado un alegato de Squibb Manufacturing, Inc. en calidad de *amicus curiae*. Agotado el trámite reglamentario, nos encontramos en posición de resolver.

II

■ De acuerdo con el régimen de compensaciones a obreros establecido por la Ley de Compensaciones por Accidentes del Trabajo, cuando un empleado sufre lesiones, enfermedades, se inutiliza o pierde la vida como consecuencia de "cualquier acto o función inherente a su trabajo" y su patrono está asegurado de acuerdo con la ley, su derecho a obtener resarcimiento está limitado a la compensación dispuesta en el estatuto, la cual es administrada a través del Fondo del Seguro del Estado. Véanse los Arts. 2 y 20 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. secs. 2 y 21.

El obrero así lesionado carece de una causa de acción para demandar a su patrono ante los tribunales de justicia por los daños y perjuicios sufridos, irrespectivamente del grado de negligencia patronal que pueda haber mediado. *De Jesús v.*

---

(6) Aunque se levantan otros errores que dispondrían del caso sin tener que resolver la cuestión certificada, éstos no aplican a todos los demandantes.

Luego de examinar el Vol. I del apéndice del expediente en apelación ante el Primer Circuito, igualmente consideramos sin mérito el argumento de los demandantes de que la cuestión certificada no fue levantada en primera instancia. La Corte de Apelaciones de Estados Unidos para el Primer Circuito (Corte de Apelaciones), al certificarnos la controversia, aparentemente también lo entendió así.

*Osorio*, 65 D.P.R. 640, 643 (1946); *Cortijo Walker v. Fuentes Fluviales*, 91 D.P.R. 574, 580 (1964); *B.C.R. Co., Inc. v. Tribunal Superior*, 100 D.P.R. 754, 758–759 (1972); *Admor. F.S.E. v. Flores Hnos. Cement Prods.*, 107 D.P.R. 789, 792 (1978).

■ Este sistema, "integrado sobre la base de una responsabilidad objetiva social", *Cortijo Walker v. Fuentes Fluviales*, supra, págs. 578–579, fue implantado para eliminar el desamparo en que quedaban los obreros que sufrían accidentes en el trabajo, quienes para poder obtener compensación tenían que demostrar judicialmente la negligencia de su patrono. En el mejor de los casos se producía un remedio monetario tardío; en el peor, ninguno. En el diseño del esquema se comprometió el mayor resarcimiento disponible según las normas generales del derecho civil a cambio de una módica pero segura compensación estatutaria fundamentada en un criterio de dependencia. Íd., pág. 579.

■ No obstante, cuando la lesión, enfermedad o muerte que origina el derecho a la compensación del obrero ocurre en circunstancias que hacen responsable a un "tercero", la Ley de Compensaciones por Accidentes del Trabajo no afecta la responsabilidad civil del causante del daño que es ajeno a la relación patrono-empleado. El estatuto no pretende extender la inmunidad contra reclamaciones de obreros a extraños. Véase 2A *Larson's Workmen's Compensation Law* Sec. 71.10 (1988). En esta situación se reconoce que tanto el obrero lesionado como el Fondo del Seguro del Estado, en subrogación por los beneficios pagados al empleado, pueden reclamarle judicialmente al tercero. Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32.

■ Para financiar el sistema de compensaciones, el estatuto establece un sistema de seguro compulsorio para todos los patronos del país. Véanse los Arts. 2 y 18 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. secs. 2 y 19. La ley no sólo obliga a los patronos a pagar el seguro de sus empleados, sino que el patrono también es responsable *subsidia-*

*riamente* del pago de las primas (el "impuesto") por los obreros de una persona que "ajustó" con él o los de "un contratista o subcontratista independiente" que ha contratado con él cuando estos últimos no están asegurados:

> Todo patrono asegurado al dar cuenta con sus nóminas anuales, deberá incluir en tales nóminas los salarios pagados a todos los obreros y empleados que estuvieren trabajando o fuere a emplear bien por ajuste, o ya bajo una persona con quien ajustó el patrono o bajo un contratista o subcontratista independiente empleado o contratado por dicho patrono, y toda cuenta, o impuesto cobrado por el Estado se basará sobre la nómina corriente del patrono, en las cuales deberán estar incluidos los trabajadores antes mencionados; Disponiéndose, que esta disposición no será aplicable a los patronos para quienes se hiciere trabajo por un contratista independiente que estuviere asegurado como patrono de acuerdo con las disposiciones de este Capítulo. Art. 19 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 20.

■ Este artículo incorpora la "cláusula de contratista" (*contractor-under*) en nuestra ley. La mayoría de las jurisdicciones norteamericanas tienen disposiciones similares. Véase, en general, *Larson's*, supra, Vol. 1C, Secs. 49.00 y 49.11. Uno de sus propósitos es evitar la potencial evasión de la cubierta de ley que puede ocurrir si un patrono, para reducir sus costos, subcontrata parte de su trabajo ordinario con contratistas no asegurados. Íd., Sec. 49.00.

■ El lenguaje de carácter amplio del citado precepto también intenta asegurar que el Fondo del Seguro del Estado obtenga suficiente información sobre las nóminas pagadas para que eventualmente pueda computar y facturar las primas. Si un patrono incumple con su obligación, aquella persona que lo contrató para la realización de una obra o la prestación de un servicio deberá suplir el incumplimiento.

■ Al interpretar el Art. 19 de la Ley de Compensaciones por Accidentes del Trabajo, *supra*, señalamos que su propósito es "no sólo evitar la evasión de la ley, sino proteger a los obreros y

empleados de subcontratistas irresponsables y no asegurados mediante la imposición de responsabilidad al contratista principal que, al seleccionar al subcontratista, puede exigirle protección adecuada contra accidentes del trabajo". *Colón Santiago v. Comisión Industrial*, 97 D.P.R. 208, 209 (1969). Precisamente, en *Colón Santiago v. Comisión Industrial*, supra, pág. 210, utilizamos por primera vez el término "patrono estatutario" para referirnos al contratista principal y distinguirle del subcontratista, el patrono real o contractual del empleado que reclama por un accidente laboral, cuando el principal puede estar cobijado por la inmunidad patronal.

En *Lugo Sánchez v. A.F.F.*, 105 D.P.R. 861 (1977), tuvimos la oportunidad de considerar la viabilidad de una demanda en daños y perjuicios por lesiones sufridas en el curso del trabajo instada por un empleado de un contratista independiente *asegurado*. La acción iba dirigida contra el dueño de un proyecto en construcción que había contratado la obra con el patrono real del obrero. Resolvimos que en aquellas situaciones en donde surge la descrita relación contractual, el principal contratante o dueño de la obra no es un "tercero" dentro del significado del Art. 31 de la mencionada ley, *supra*, sino un "patrono estatutario", inmune a reclamaciones de obreros por estar expresamente exento de la obligación de asegurar en aquellos casos en donde el contratista independiente estuviera asegurado. Íd., págs. 864–865. Véanse, también: *Vda. de Costas v. P.R. Olefins*, 107 D.P.R. 782, 785 (1978); *Rodríguez v. Union Carb. Grafito, Inc.*, 107 D.P.R. 848, 849–850 (1978).

Nuestra jurisprudencia únicamente ha reconocido la figura del "patrono estatutario" dentro del contexto de un contrato o subcontrato de obra o de servicios, y sólo para aquellos dueños de obra, principales contratistas o subcontratistas que tuvieran —con relación al trabajador lesionado— la obligación legal común de asegurarlo con el Fondo del Seguro del Estado. Véanse: *Lugo Sánchez v. A.F.F.*, supra, págs. 866–867; *F.S.E. v. E.L.A.*, 111 D.P.R. 402, 405 (1981). Por estos motivos, en *Ruiz*

*Díaz v. Vargas Reyes*, 109 D.P.R. 761, 763 (1980), rechazamos incorporar en Puerto Rico la doctrina de la inmunidad de comunidad familiar que propugna inmunizar a todos los patronos participantes de un mismo proyecto contra reclamaciones de los obreros que en éste se desempeñan.

En *Ruiz Díaz v. Vargas Reyes*, supra, pág. 765, señalamos que "[e]l factor determinante de inmunidad lo es la existencia de ese vínculo directo o indirecto entre el trabajador que sufre el accidente y el patrono en el curso de cuyo empleo y como consecuencia del cual ocurre la lesión". En ausencia de ese nexo jurídico que relaciona al patrono directo del obrero con el causante de la lesión en la "obligación legal común" de asegurar al empleado con el Fondo del Seguro del Estado, estaremos ante el "tercero" desprovisto de la protección estatutaria contra demandas de obreros lesionados en el trabajo.

### III

En el caso de autos, la relación contractual de la demandada Parke con Labs —el patrono real de los empleados demandantes— no corresponde a la vinculación contratista principal-subcontratista o la de dueño de obra-contratista en el contexto de un contrato de obra o de servicios. Ha sido únicamente en estas situaciones donde hemos aplicado la doctrina de "patrono estatutario".

Los contratos de licencia y asistencia técnica entre ambas corporaciones no son contratos de obra. Tampoco los contratos de asistencia técnica convierten a Parke en el patrono estatutario de los empleados de Labs, ya que aunque son contratos de servicios relacionados con el negocio del principal contratante, de acuerdo con sus términos, es Parke la que está obligada a prestarlos para Labs. En el mejor de los casos la relación se da a la inversa. Es decir, Labs sería el patrono estatutario de los empleados de Parke que le prestan servicios técnicos a la subsidiaria. De acuerdo con nuestra jurisprudencia, Parke no puede considerarse el patrono

estatutario de los empleados de Labs en ausencia de un contrato de obra o de servicios en el que Labs se obligue a realizar un trabajo para Parke. Es sólo en esta situación que surge la "obligación legal común" de Parke y Labs de asegurar a los empleados de Labs.[7]

Parke argumenta que debe considerarse como patrono estatutario de los demandantes porque su subsidiaria Labs llevaba a cabo parte de su producción. Su tesis es que "un patrono estatutario es simplemente alguien que emplea a otra persona para que haga parte de su trabajo" (Alegato de los apelantes, pág. 6) y que para estos fines el tribunal puede examinar la naturaleza de todas las relaciones económicas y la vinculación de facto entre las partes sin tener que limitarse al contrato. No tiene razón.

La relación *contractual* entre los protagonistas de la doctrina de "patrono estatutario" siempre ha sido medular en su aplicación. Véanse: *Lugo Sánchez v. A.F.F.*, supra, pág. 865 ("*[D]entro de su relación contractual* con la constructora Zachry, la Autoridad de las Fuentes Fluviales es un patrono, llámese principal o 'estatutario'" (énfasis suplido)); *Vda. de Costas v. P.R. Olefins*, supra, pág. 785 ("[l]a determinación de si un demandado es o no patrono estatutario *depende de las relaciones contractuales entre dicho demandado y el patrono real de los obreros*" (énfasis suplido)).

Además, aun cuando aceptáramos la existencia de un contrato de suministro entre ambas corporaciones, las compraventas sucesivas de Parke de los lotes de anticonceptivos producidos en Labs son insuficientes para activar la inmunidad de la cláusula de contratista. La compraventa no es el contrato que describe el Art. 19 de la Ley de Compensaciones por Accidentes

---

[7] No tiene razón Parke Davis & Company (en adelante Parke) cuando argumenta que es responsable del pago de las primas del seguro obrero de Parke Davis Labs (en adelante Labs) en el caso que su subsidiaria no lo haga. La ley no le impone a los accionistas de una corporación la obligación de asegurar a los empleados de ésta. Más aún, como regla general, los accionistas no son responsables de las deudas y obligaciones de la corporación.

del Trabajo, *supra.* Véase *Atiles, Admor. v. Comisión Industrial,* 67 D.P.R. 503, 505 (1947). El mero hecho de que Labs le vendiera siempre toda su producción a Parke sin estar obligada a ello, no puede conferirle a la compradora inmunidad como patrono de los empleados de la vendedora.

■ De igual manera, el mero hecho de que Parke sea la tenedora de la totalidad de las acciones de Labs no activa la inmunidad. *Larson's,* supra, Sec. 72.13, pág. 14-75. Ya así lo habíamos resuelto en *López Rodríguez v. Delama,* 102 D.P.R. 254 (1974). Allí decidimos revisar la desestimación de una demanda de daños y perjuicios presentada por una empleada de una corporación que mientras era transportada en un vehículo conducido por un accionista y oficial de su patrono, luego de la jornada de trabajo, sufrió lesiones debido a un accidente de tránsito. La empleada no reclamó compensación al Fondo del Seguro del Estado, aun cuando se trataba de un accidente cubierto por la ley. Tampoco demandó a su patrono, sino que instó la acción contra el conductor del vehículo y su compañía aseguradora. El tribunal de instancia resolvió que, tratándose de un accidente del trabajo, el derecho a obtener compensación a través del Fondo del Seguro del Estado era el único remedio de la demandante.

Al revocar la sentencia allí recurrida dijimos:

> Aunque no existe unanimidad de criterio, la doctrina prevaleciente sostiene que *la inmunidad que le confiere el estatuto al patrono asegurado no se extiende a* los directores, oficiales, *accionistas,* administradores o co-empleados de dicho patrono. . . . En ausencia de expresión legislativa sobre el significado del vocablo "terceras personas" usado en el Art. 31 de la Ley, debemos conferirle su significado usual asumiendo que incluye a toda persona aparte del empleado lesionado y su patrono asegurado. . . . [N]o hay justificación en extender la inmunidad que confiere la ley a directores, oficiales u otros empleados del patrono asegurado que no contribuyen personalmente para sufragar los gastos del Fondo cuando éstos han incurrido en negligencia y han causado daños a

otros empleados. (Énfasis suplido.) *López Rodríguez v. Delama,* supra, págs. 258–259.[8]

Rechazamos de esa forma extender automáticamente la inmunidad patronal a todas aquellas personas que ocupan cargos o son dueñas de la entidad corporativa que emplea al lesionado.

■ En virtud de lo expuesto, consideramos que la relación jurídica entre Parke y Labs no es la que describe la cláusula de contratista de la Ley de Compensaciones por Accidentes del Trabajo. Para que una corporación matriz pueda considerarse "patrono estatutario" de los empleados de su subsidiaria es necesario que exista un contrato de ajuste, de obra o de servicios entre ambas corporaciones de modo que la matriz *advenga obligada a efectuar los pagos de las primas* al Fondo del Seguro del Estado, en el caso en que la subsidiaria no lo haga. Los hechos de este caso no activan la inmunidad patronal a que se refiere el Art. 19 de la Ley de Compensaciones por Accidentes del Trabajo, *supra.*[9]

## IV

■ No podemos concluir sin antes apuntar que la inmunidad patronal que se fundamenta en la cláusula de contratista del Art. 19 de la Ley de Compensaciones por Accidentes del Trabajo, *supra,* no debe confundirse con la doctrina del álter ego. Como bien señalan los propios apelantes, cuando se descorre el velo corporativo de la subsidiaria, al demostrarse que ésta no es más que un álter ego de la matriz, ambas corporaciones se tratan jurídicamente como si fueran una sola para todos los propósi-

---

[8] Esta doctrina se ha convertido en minoritaria. En la actualidad sólo diez (10) estados la mantienen; no obstante, el cambio se ha producido principalmente por acción *legislativa.* 2A *Larson's Workmen's Compensation Law* Secs. 72.11 y 72.22, págs. 14–68, 14–116 a 14–117 (1988).

[9] Sobre la responsabilidad civil de Parke a la luz de las normas de nuestro Derecho, no nos corresponde pasar juicio. La cuestión no nos ha sido certificada. Ni siquiera ha sido levantada como error por los apelantes ante la Corte de Apelaciones.

tos.[10] En ese caso la matriz tendría inmunidad, no por considerarse patrono estatutario del obrero lesionado sino por ser su patrono directo. Ahora bien, ninguna de las partes ha intentado descorrer el velo corporativo en el caso de autos.[11]

Finalmente, rechazamos establecer sin apoyo estatutario alguno soluciones adoptadas en otras jurisdicciones para resolver controversias de este tipo, máxime cuando no existe un consenso de enfoques. Véanse, *e.g.*: Nota, *Adopting an Economic Reality Test when Determining Parent Corporations' Status for Workers' Compensation Purposes*, 12 J. Corp'n L. 569 (1987); C. Davis, *Workmen's Compensation–Using an Enterprise Theory of Employment to Determine Who is a Third Party Tort-Feasor*, 32 U. Pitt. L. Rev. 289 (1971). Compete a la Asamblea Legislativa tomar las medidas que sean pertinentes para corregir cualquier posible inequidad en el régimen de compensaciones a obreros.

▪ En conclusión, contestamos las preguntas certificadas de la forma siguiente: no aplica la doctrina de "patrono estatutario" en el contexto de una corporación matriz que posea todas las acciones de la subsidiaria cuando cada una tiene su propia personalidad jurídica y entre ellas únicamente existen unos acuerdos de licencia y asistencia técnica. Independientemente de la naturaleza de la estructura corporativa, la relación contractual entre las empresas es medular en la determinación de la aplicación de la doctrina de "patrono estatutario". Después de todo es de esta manera objetiva que el Administrador del Fondo del Seguro del Estado podrá evaluar si la corporación matriz tenía o

---

[10] Alegato de los apelantes, pág. 12. Los apelados también están de acuerdo. Réplica de los demandantes-apelados, pág. 2.

[11] Sin embargo, véase *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 661–663 (6to Cir. 1979), donde se resuelve que una vez los dueños de una empresa dividen el negocio en corporaciones separadas, los "principios de reciprocidad" requieren que los tribunales del mismo modo reconozcan las personalidades jurídicas distintas al momento en que un obrero lesionado demanda por un accidente del trabajo.

no la obligación legal de asegurar a los empleados de su subsidiaria en el caso en que esta última no los haya asegurado.[12]

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García emitió opinión concurrente. El Juez Asociado Señor Rebollo López al disentir expresa en la sentencia que: "la opinión que en el presente caso emite una mayoría del Tribunal con el propósito de contestar las 'interrogantes' que nos sometiera la Corte de Apelaciones de los Estados Unidos para el Primer Circuito, relativas las mismas a la aplicación de la doctrina de 'patrono estatutario' en el contexto de una relación entre corporaciones matriz-subsidiaria, resulta ser una fútil e inoperante por cuanto la misma no acierta en articular unas guías claras de derecho que le permitan a los tribunales, ni a los funcionarios administrativos concernidos, resolver los casos que sobre esta materia lleguen ante su consideración. En adición, la 'norma de derecho' expuesta por la mayoría del Tribunal en relación con esta materia es una que puede ser 'burlada', y evadida con suma facilidad, por las corporaciones envueltas en situaciones similares." El Juez Asociado Señor Ortiz disiente sin opinión escrita.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

"El criterio rector para la situación que consideramos debe aislarse de hechos que pueden variar dependiendo de la ingeniosidad de las partes al formular las condiciones del vínculo jurídico y más bien enmarcarse en la determinación de la posición en que se encuentra una en relación con la otra con especial énfasis en el grado de dependencia económica. Debe atenderse primordialmente a las realidades económicas en lugar de a las clasificaciones técnicas que puedan prevalecer en otras áreas del derecho, pero

---

[12] En vista de esta contestación, es innecesario contestar la segunda pregunta certificada.

que no conducen a una justa solución cuando se trata de legislación reparadora." *Nazario v. Vélez*, 97 D.P.R. 458, 465 (1969).

En su total dimensión esos pronunciamientos nos exigen enfocar nuestra razón de decidir en fundamentos que propicien la solución más justiciera conforme a la letra y espíritu original de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq.*, atemperada a la realidad cambiante de nuestra sociedad industrial. *Infra.*

## I

El presente recurso versa sobre la aplicación de la doctrina del *patrono estatutario* a la peculiar relación contractual dimanante entre una entidad corporativa que opera fuera de Puerto Rico y su subsidiaria establecida aquí.

Confrontada con esta cuestión —no resuelta *expresamente* con anterioridad por este Tribunal— la Corte de Apelaciones de Estados Unidos para el Primer Circuito, mediante el procedimiento de Certificación establecido en la Regla 53.1(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, y la Regla 27 del Reglamento del Tribunal Supremo de Puerto Rico, 4 L.P.R.A. Ap. I-A, nos remitió las interrogantes siguientes: "(1) ¿aplica la doctrina de patrono estatutario en el contexto de corporaciones matriz-subsidiaria, donde la subsidiaria es propiedad *absoluta* de la matriz, y las corporaciones están relacionadas con las actividades pertinentes al caso por un convenio de manufactura bajo licencia (*license agreement*)?; (2) si en la *afirmativa*, ¿debe hacerse la determinación de la condición de patrono estatutario únicamente a base de este convenio, o pueden los tribunales considerar la relación *de facto*, basada, por ejemplo, en la estructura corporativa de la relación matriz-subsidiaria o la naturaleza económica de ésta?" (Traducción nuestra y énfasis suplido.) Certificación, págs. 16–17.

Por las razones que exponemos a continuación, contestamos la primera interrogante en la *negativa*. La apelante, Parke Davis &

Company (Parke), *no* goza de la condición de patrono inmune a los reclamos de los empleados de su subsidiaria en propiedad absoluta, Parke Davis Labs (Labs). En consecuencia, por académica, nos abstenemos de pasar juicio sobre la segunda interrogante.

## II

El trasfondo fáctico surge claramente de la Certificación. *Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780, 790 (1982). Los mismos fueron ventilados y adjudicados en los procedimientos ante el foro federal. A tales efectos, nos remitimos a la opinión del Tribunal. Concentrémonos, pues, en el derecho aplicable.

Para reconocerle a un patrono la inmunidad que ofrece la Ley de Compensaciones por Accidentes del Trabajo, debemos atender dos (2) conceptos cruciales que, en conjunción, obedecen al verdadero fin y alcance de esta legislación. Ello exige que repasemos someramente el esquema atinente al *patrono asegurado* en contraste con un tercero expuesto a una reclamación en daños, que denominaremos *tercero vulnerable*.

La Ley de Compensaciones por Accidentes del Trabajo establece un sistema mediante el cual el obrero lesionado es acreedor a una compensación —con independencia de la identidad del causante del daño— siempre que el accidente ocurra dentro del ámbito de las funciones del empleo. A cambio de este esquema reparador, el patrono, al *sufragar* el costo de operación de este programa mediante aportaciones anuales, adquiere *inmunidad* contra cualquier reclamación del obrero.

Ahora bien, el Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32, reconoce la vulnerabilidad de un *tercero* frente a reclamaciones de obreros lesionados. El Art. 19 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 20, nos señala quién es el patrono obligado a asegurar a sus empleados. Esta obligación no sólo se impone sobre el patrono respecto a sus obreros directos e inmediatos, *sino que se extiende a aquel patrono que como principal (patrono estatutario) contrata con un contratista res-*

*pecto a los obreros de este último.* La *clave* para esta obligación "subsidiaria" radica en el hecho de que si el contratista está asegurado, el principal no viene obligado a asegurar a los empleados de aquél.

Por ende, la determinación de quién es patrono asegurado a la luz de la Ley de Compensaciones por Accidentes del Trabajo ha de hacerse en consideración a "(1) la existencia o no de la obligación de asegurar; y (2) si efectivamente está la persona cubierta por el Fondo [del Seguro del Estado], con referencia al obrero reclamante". *F.S.E. v. E.L.A.*, 111 D.P.R. 402, 405 (1981). Sólo si el patrono contractual no ha asegurado a sus obreros es que el patrono estatutario viene obligado a cubrirlos, obteniendo así la protección que ofrece el estatuto. De lo contrario, *al no hacer el patrono estatutario aportación alguna respecto a éstos, no debe cobijarle la inmunidad que ofrece esta legislación.* Como sostuvimos al adherirnos a la opinión disidente del ex Juez Asociado Señor Dávila en *Lugo Sánchez v. A.F.F.*, 105 D.P.R. 861, 871 (1977), "[s]iendo ello así no vemos razón alguna para extender la inmunidad concedida por la ley al patrono estatutario cuando por razón de su negligencia un empleado de un patrono contractual sufre daños. No podemos olvidarnos de que los terceros que ofrecen mayor peligro a la seguridad de los obreros son los empleados de los patronos estatutarios que trabajan en el mismo proyecto. El obvio propósito de la disposición que permite las demandas contra terceros causantes del daño es que la pérdida la sufra el causante del daño y no la tenga que soportar el obrero lesionado o el Fondo del Seguro del Estado".

Resulta inevitable, pues, concluir que el patrono estatutario al cual la Ley de Compensaciones por Accidentes del Trabajo pretende concederle inmunidad es aquel que, como cuestión de hecho, ha asegurado a los obreros de un contratista que emplea, el cual no está asegurado. Sólo así surge la relación jurídica que entrelaza al patrono estatutario, al obrero del patrono contractual o directo y al Fondo del Seguro del Estado. Por ende, notamos que hay dos (2) clases de patronos estatutarios: uno inmune que sufraga las primas de seguro de los obreros de su contratista, y

otro, *tercero vulnerable,* que no realiza pago alguno. Igual criterio seguimos al disentir en *Vda. de Costas v. P.R. Olefins,* 107 D.P.R. 782 (1978).

### III

Expuestos sucintamente estos principios, apliquémoslos a la situación de autos.

Labs, subsidiaria en propiedad absoluta de Parke, a los efectos del presente recurso es un *patrono directo asegurado.* Por ello, la Ley de Compensaciones por Accidentes del Trabajo le concedió inmunidad absoluta. No obstante, *Parke no ha pagado ni paga las primas impuestas por esta ley respecto a los empleados de Labs.* Ante esta situación, Parke evidentemente es un *tercero vulnerable.* Aun cuando pudiese ser un patrono estatutario —esto es, el que emplea unos obreros a través de otros—(1) es un dato no contradicho que Parke no aseguró los obreros de Labs, por lo que no le cobija "el palio protector de la inmunidad". *Lugo Sánchez v. A.F.F.,* supra, pág. 872.

### IV

La opinión emitida hoy por el Tribunal, aunque correcta en el resultado, deja abierto un camino muy amplio al ingenio de la

---

(1)  Dado a que Parke Davis Labs (Labs) es un patrono asegurado que paga por las primas de sus obreros, no consideramos necesario resolver la cuestión de si Parke Davis & Company (Parke) es o no un patrono estatutario a la luz de las relaciones jurídicas que enmarcan su relación con Labs, a saber: (1) Parke fabricaba *antes* de 1970 en una división suya los anticonceptivos orales; (2) *desde entonces,* Labs es quien los manufactura; (3) toda la producción de Labs se hace bajo la autorización de Parke, puesto que este último le permite utilizar sus *patentes, certificaciones* y *permisos del gobierno federal* para el manejo y uso de la materia prima involucrada en la manufactura, además de que diseñó y aprobó el proceso de producción, de control de calidad y de empaque del producto final (el cual habría de llevar el logo de Parke y no de Labs), y (4) desde su establecimiento, toda la producción de Labs ha estado destinada a Parke, aun cuando Labs "podía" vender el producto a otra entidad.

Similarmente, nos abstenemos de pronunciarnos sobre los efectos que en la relación jurídica Parke-Labs tendría la aplicación de la "doctrina de un solo patrono", la cual ha ganado aceptación en este Tribunal en el ámbito de las relaciones laborales. Véanse, al efecto: *J.R.T. v. Asoc. C. Playa Azul I,* 117 D.P.R. 20, 28 (1986); *Odriozola v. S. Cosmetic Dist. Corp.,* 116 D.P.R. 485, 496–497 esc. 5 (1985).

redacción. Simples formalidades o acuerdos contractuales podrían conducir al absurdo de que la inmunidad se extienda a quien no paga, sólo por tener "la obligación legal común de asegurar" a los obreros de su contratista. La mera expectativa de ese deber no es suficiente. Debemos evitar los efectos perjudiciales sobre los derechos de los obreros mediante expansiones doctrinales no previstas en el esquema estatutario de la Ley de Compensaciones por Accidentes del Trabajo.

Por estos fundamentos, concurrimos.