RESOLUCIÓN
Atendida la petición de certificación presentada en el caso de epígrafe, se anula el auto y se deniega la petición por estar igualmente dividido el Tribunal.
Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente Señor Hernández Denton emitió un voto de conformidad. La Juez Asociada Señora Rodríguez Rodríguez emitió un voto disidente, al cual se le unieron el Juez Asociado Señor Fuster Berlingeri y la Jueza Asociada Señora Fiol Matta.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

*74 Voto de conformidad emitido por el
Juez Presidente Señor Hernández Denton.
Entendemos que con la desestimación del pleito por la Corte de Quiebra de Estados Unidos para el Distrito de Puerto Rico (Corte de Quiebra) y la consiguiente desestimación de la apelación por el Panel de Apelaciones de Quiebra de Estados Unidos para el Primer Circuito (Panel de Apelaciones de Quiebra), la cuestión certificada ante nosotros se tornó académica. De acuerdo con los principios de justiciabilidad que gobiernan nuestra función revisora, debemos abstenernos de intervenir en este caso. Por ende, coincidimos con la Resolución del Tribunal que anula el auto expedido y deniega la petición de certificación.
I
Oriental Bank & Trust (Oriental) presentó una demanda de cobro de dinero y ejecución de hipoteca por la vía ordinaria contra James Patrick Smyth y Shayla Ivonne Puig Caballero (deudores) en el Tribunal de Primera Instancia, Sala Superior de Caguas. Así las cosas, Oriental se adjudicó uno de los inmuebles de los deudores en la venta judicial.
Antes de que se otorgara la escritura de venta judicial, los deudores presentaron una petición de quiebra ante la Corte de Quiebra. En vista de que el Tribunal de Primera Instancia ordenó que se expidiera el mandamiento para lanzar a los deudores, Oriental presentó una moción ante la Corte de Quiebra para que se levantara la paralización automática, de manera que se le permitiera lanzar a los deudores. Argüyó que el bien inmueble no era parte del caudal de quiebra y que le pertenecía, ya que había adquirido su dominio sobre él mediante la adjudicación en la *75 venta judicial. No obstante la oposición de los deudores, la Corte de Quiebra levantó la paralización automática.
Oportunamente los deudores recurrieron al Panel de Apelaciones de Quiebra. Como no existe un precedente claro, este Panel nos certificó que aclaremos si el dominio sobre el inmueble objeto de un procedimiento ordinario de ejecución hipotecaria se transfiere al momento de la adjudicación o mediante la escritura de venta judicial.
Sin embargo, posteriormente la Corte de Quiebra desestimó el caso porque los deudores incumplieron con el plan de pago. En vista de ello, los deudores presentaron una moción ante nosotros con la cual solicitaron el archivo del recurso de certificación por haberse tornado académico. Por su parte, Oriental se opuso al archivo, argumentando que la cuestión certificada era recurrente y capaz de evitar la revisión judicial. Finalmente, el Panel de Apelaciones de Quiebra desestimó la apelación a instancia de los deudores. En atención a este tracto procesal, resolvemos.
II
La doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando su jurisdicción. Dicha doctrina nace del principio elemental de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas, que tienen un interés real en obtener un remedio judicial que haya de afectar sus relaciones jurídicas. Esto es, para el ejercicio válido del poder judicial se requiere la existencia de un caso o controversia real. Ortiz v. Panel F.E.I., 155 D.P.R. 219 (2001).
Como corolario de la doctrina de justiciabilidad, los tribunales están impedidos de emitir opiniones consultivas. De lo contrario, se producirían decisiones en el vacío, en el abstracto o bajo hipótesis de índole especulativa, y los tribunales, contrario a su función, actuarían como asesores o *76 consejeros. Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715 (1980); E.L.A. v. Aguayo, 80 D.P.R. 552 (1958).
En vista de que la justiciabilidad es una doctrina autoimpuesta, los propios tribunales deben preguntarse y evaluar si es o no apropiado entender en un determinado caso, mediante un análisis que les permita ejercer su discreción en cuanto al límite de su poder constitucional. Rexach v. Ramírez, 162 D.P.R. 130 (2004).
Por otro lado, el procedimiento de certificación interjurisdiccional es el instrumento procesal adecuado que per-mite a un tribunal someter, para una contestación definitiva, a otro tribunal de jurisdicción distinta, preguntas sobre cuestiones que se refieren al derecho de esa jurisdicción. Las contestaciones a esas preguntas obligan en cualquier procedimiento judicial ulterior entre las mismas partes, según la doctrina de cosa juzgada. Guzmán v. Calderón, 164 D.P.R. 220 (2005).
La certificación es el medio más directo, rápido y económico para que un tribunal federal obtenga una interpretación autorizada sobre el derecho estatal. De acuerdo con este procedimiento, las controversias no resueltas en el derecho estatal se transfieren directamente al foro de mayor jerarquía del estado mediante la certificación que hace la Corte federal de preguntas específicas para precisar una cuestión definitiva que obligue a las partes. Guzmán v. Calderón, supra.
De tal manera, el mecanismo de la certificación permite preservar y respetar la función prístina de las cortes estatales de interpretar y formular el derecho de los estados. Además, ofrece la ventaja de evitar que las partes tengan que iniciar un nuevo pleito en los tribunales estatales, siguiendo todo el trámite judicial —usualmente lento y costoso— hasta obtener una interpretación final y firme sobre el derecho estatal. Pan Ame. Comp. Corp. v. Data Gen. Corp., 112 D.P.R. 780 (1982).
*77 Según establecido por la nueva Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (Ley de la Judicatura de Puerto Rico), este Tribunal, “[mjediante auto de certificación, podrá conocer de cualquier asunto que le fuere certificado por el Tribunal Supremo de Estados Unidos de América, un Tribunal de Apelaciones de Circuito de Estados Unidos de América, un Tribunal de Distrito de Estados Unidos de América o el más alto tribunal apelativo de cualesquiera de los estados de Estados Unidos de América, cuando así lo solicite cualesquiera de dichos tribunales, de existir ante el tribunal solicitante cualquier asunto judicial en el que estén implicados cuestiones de derecho puertorriqueño que puedan determinar el resultado del mismo y respecto al cual, en la opinión del tribunal solicitante, no existan precedentes claros en la jurisprudencia de este Tribunal”. Art. 3.002 de la Ley de la Judicatura de Puerto Rico, 4 L.P.R.A. sec. 24s(f).
Por lo tanto, nuestra capacidad de conocer en materia de certificación no es absoluta. Es necesario: (1) que haya un asunto judicial existente ante el tribunal solicitante; (2) que implique cuestiones de derecho puertorriqueño; (3) que puedan determinar el resultado del pleito, y (4) que no existan precedentes claros en nuestra jurisprudencia.
Estos requisitos revelan la naturaleza de la certificación como mecanismo en apoyo a otra jurisdicción. Nuestra intervención en una certificación se justifica en cuanto exista un pleito ante el tribunal solicitante, en el cual lo que se determine finalmente por el tribunal certificado produzca efectos concretos.
Esto se debe a que la certificación no puede eludir el principio fundamental que fija el sentido y el propósito de la función judicial. Nos referimos al hecho de que la función judicial sólo puede ejercerse para resolver controversias concretas, reales y efectivas entre litigantes que reclaman derechos opuestos ante un tribunal. E.L.A. v. Aguayo, *78 supra. Es necesario, por lo tanto, que la certificación satisfaga cabalmente el principio elemental de justiciabilidad, no sólo en nuestro foro, sino, además, en el foro federal. Pan Ame. Comp. Corp. v. Data Gen. Corp., supra.
Una de las manifestaciones concretas del principio de justiciabilidad es la doctrina de academicidad. Un caso es académico cuando el paso del tiempo o los cambios fácticos o judiciales acaecidos durante el trámite en el tribunal causan que el pleito pierda su carácter adversativo, de manera que el remedio que pueda adoptar el tribunal no tendrá efecto real alguno en cuanto a esa controversia. Una vez se determina que ha desaparecido el carácter adversativo entre los intereses de las partes involucradas, los tribunales pierden su jurisdicción en el pleito y, por lo tanto, deben abstenerse de considerar el caso en sus méritos. Con esta limitación sobre el poder de los tribunales, se persigue evitar el uso innecesario de los recursos judiciales y obviar pronunciamientos autoritativos de los tribunales que resulten superfinos. C.E.E. v. Depto. de Estado, 134 D.P.R. 927 (1993); E.L.A. v. Aguayo, supra.
Sin embargo, existen varias excepciones a la doctrina de academicidad: a saber, cuando se plantea una cuestión recurrente y que por su naturaleza evade o se hace muy difícil la adjudicación ante los tribunales; en aquellos casos en que la propia demandante termina voluntariamente su conducta ilegal; si la situación de hechos ha sido modificada por el demandado, pero no tiene visos de permanencia; en los casos en que el tribunal ha certificado un pleito de clase y la controversia se tornó académica para un miembro de la clase, mas no para su representante, o aquellos casos que aparentan ser académicos pero que en realidad no lo son por sus consecuencias colaterales. El Vocero v. Junta de Planificación, 121 D.P.R. 115 (1988).
La excepción sobre el carácter recurrente o repetitivo de la controversia exige el estudio de tres factores: la probabilidad de la recurrencia; las partes involucradas en el pro *79 cedimiento, y la probabilidad de que la controversia evada adjudicación o revisión judicial. El elemento principal en el proceso de concluir si una determinación afirmativa de academicidad promoverá la finalidad de la autolimitación judicial es la probabilidad de recurrencia. Cuando existe la probabilidad de que la controversia se repita o recurra, los tribunales debemos considerar el asunto planteado a pesar de que haya advenido académico. Además, debe existir una probabilidad sustancial de que la controversia, a pesar de ser recurrente, evite la adjudicación. Esto sucede con mayor frecuencia en aquellas controversias que son de por sí de muy corta duración, aunque pueden existir otras que ocasionen que una controversia eluda la revisión judicial. Asoc. de Periodistas v. González, 127 D.P.R. 704 (1991).
En conclusión, un dictamen judicial en una controversia académica, en cuanto ofrece una solución que no tiene efectos prácticos sobre las partes, constituye una opinión consultiva. Emp. Pur. Des., Inc. v. H.I.E.Tel., 150 D.P.R. 924 (2000); Angueira v. J.L.B.P., 150 D.P.R. 10 (2000). De no verificarse ninguno de los supuestos excepcionales antes mencionados, el ejercicio de la facultad revisora que efectúan los tribunales en un caso académico constituye una actuación contraria a la doctrina de justiciabilidad.
III
De acuerdo con el derecho aplicable, entendemos que el caso ante nuestra consideración no es justiciable. Veamos.
Se nos planteó una cuestión del Derecho puertorriqueño, la cual surgió de un caso que no estaba pendiente de adjudicación ante nosotros. Mediante recurso de certificación, el Panel de Apelaciones de Quiebra nos pidió aclarar esa cuestión ineludible para resolver el caso que tenía ante su consideración.
Según la doctrina de justiciabilidad, estamos impedidos de emitir opiniones en ausencia de un caso o controversia *80 real. Por vía excepcional, el mecanismo de la certificación nos permite atender una cuestión del derecho local, aun cuando no haya un caso pendiente de adjudicación ante nosotros. Sin embargo, para conocer de un asunto certificado se requiere que exista un pleito pendiente de ser resuelto ante otro tribunal y que la cuestión certificada pueda determinar su resultado.
Se trata de una aparente excepción a la doctrina de justiciabilidad. Lo que hace justiciable una cuestión certificada es el hecho de que exista un pleito, aunque ante otro tribunal, en función del cual estamos decidiendo. Así, nuestra intervención queda justificada por existir una controversia genuina entre partes opuestas —que tienen un interés real en nuestro pronunciamiento— el cual afectará sus relaciones jurídicas.
Ahora bien, nos preguntamos si procede nuestra intervención cuando, antes de que nos pronunciemos sobre una cuestión certificada, se desestima el pleito con relación al cual se nos solicitó la certificación. A la luz de la doctrina de justiciabilidad, nuestra contestación debe ser no.
La misma naturaleza y el propósito del recurso de certificación imponen que los requisitos de la certificación subsistan en el momento en que emitimos nuestro pronunciamiento. En específico, por la manera peculiar de operar de la certificación, es esencial que, al momento en que nos pronunciemos, el tribunal que nos certificó aún tenga ante su consideración el pleito. De lo contrario, emitiríamos una opinión consultiva.
En el caso a quo, después de presentada la certificación, la Corte de Quiebra desestimó el pleito y el Panel de Apelaciones de Quiebra desestimó la apelación. Por ende, antes de nosotros decidir la cuestión certificada, el pleito en función por el cual se justificaba nuestra intervención ya no está pendiente de adjudicación.
Conforme a los principios de justiciabilidad esbozados, procede desestimar la certificación por haberse vuelto *81 académica. Cualquier pronunciamiento en ese sentido constituiría una opinión consultiva impermisible. En efecto, al desestimarse el pleito ante la Corte de Quiebras, se perdió el carácter adversativo de los intereses entre las partes y, por lo tanto, nuestro pronunciamiento no tendría efecto real alguno.
Estamos ante un caso claramente académico, con relación al cual no se cumple ninguna de las excepciones que justificarían nuestra intervención. Aun cuando se trata de una cuestión que podría repetirse, entendemos que no sería susceptible de evadir la revisión judicial. En efecto, el pleito se tornó académico por la desestimación y no porque la controversia sea de corta duración. Una vez la Corte de Quiebra y el Panel de Apelaciones de Quiebra desestimaron el pleito por ser académico, procede que nosotros también anulemos el auto expedido por haberse tornado académico el recurso que originó la certificación. Por ende, estamos conformes con la Resolución del Tribunal que anula el auto expedido y deniega la petición decertificación.